EMMA JENKINS v. HAWYEYE COMMERCIAL MEN'S ASSO-
CIATION, Appellant.

**Pleadings:** AMENDMENT. A petition may be amended without leave of court prior to the filing of an answer.

**Insurance:** ACTIONS: VENUE. An action to compel the assessment of benefits under a death policy may be brought and maintained in the county where the insured died.

**Beneficial insurance:** DEATH FROM "EXTERNAL, VIOLENT AND ACCIDENTAL MEANS." The term "external, violent and accidental means," as used in a benefit certificate with reference to the cause of death, has reference to the unnatural or improbable consequence of the means which produced the death; thus, where a deceased died

as the result of having swallowed a fish bone which lodged in the intestines, causing inflammation of the parts and a wound producing death, although death resulted directly from blood poison, was accidental within the meaning of the certificate.

**Pleadings:** MOTION TO STRIKE: PREJUDICE. Where a party is entitled to recover under the pleadings and proof as made, error in ruling upon a motion to strike parts of the pleadings is not prejudicial.

**Accidental death:** AFFIRMATIVE PROOF. Affirmative proof of death as the proximate result of external, violent and accidental means, has reference to such evidence of the truth of the matters asserted as tend to establish them, regardless of its character, so as to show *prima facie* that death occurred and that it resulted from the cause stated.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

TUESDAY, JANUARY 11, 1910.

REHEARING DENIED, MONDAY, APRIL 11, 1910.

ACTION in equity to require defendant to levy an assessment on its members and pay the proceeds thereof to plaintiff as beneficiary named in a certificate of insurance. Decree was entered as prayed. The defendant appeals.—*Affirmed.*

*Bradford & Johnson,* for appellant.

*Hurd, Lenehan & Kiesel,* for appellee.

LADD, J.—On August 20, 1906, George Jenkins became a member of the Hawkeye Commercial Men's Association. This entitled him, in event of being injured "through external, violent and accidental means," to certain specified benefits. If the bodily injuries so received "resulted in death within twenty-six weeks from said ac-

cident, the beneficiary named in his application for membership or his heirs if no beneficiary is named therein, shall be paid the proceeds of one assessment of two dollars upon each member in good standing but in no case shall such payment exceed the sum of five thousand dollars." He died August 26, 1907, and, the defendant having refused to levy an assessment or make any provision for the payment of the indemnity, this action to enforce compliance with the articles and by-laws of the association was begun in the district court of Dubuque County, April 22, 1908.

I.  As no answer had been filed, the plaintiff had the right to amend his petition without leave and, having

**1. PLEADINGS: amendment.** done so, the court rightly considered the petition as amended in passing on the motion for change of venue. *Kay v. Pruden,* 101 Iowa, 60.

And as the loss occurred in Dubuque County, the action was maintainable there, and the application to transfer the cause to Marshall County, the location of

**2. INSURANCE: actions: venue.** defendant's main office, was rightly overruled.  See section 3499, Code; *Prader v. Accident Association,* 95 Iowa, 149; *Matt v. Iowa Mut. Aid Ass'n,* 81 Iowa, 135.  See *Grimes v. N. W. Legion of Honor,* 97 Iowa, 315.

II. The assured was sixty-one years of age, and in good health.  He first complained of a severe pain in the rectum at about seven o'clock in the morning of April

**3. BENEFICIAL INSURANCE: death from "external, violent and accidental means."** 22, 1906, when at his son's residence in Chicago, Ill., saying that something must have lodged there.  He cleansed his hand, and, putting vaseline on his finger, inserted it in the rectum, and withdrew therefrom the rib of a fish one and one-half inches in length, and as large as a darning needle, tapering toward the end. Upon extracting his finger, it and the bone were bloody. He was a traveling passenger agent, and left on business

about an hour later, though still complaining of pain which his appearance indicated. He reached Dubuque the following day, and, on examination, Dr. Greene discovered a laceration of about three-eighths of an inch in length inside of the rectum, and through the mucous membrane. Dropping a bit of absorbent cotton in a solution of equal parts of chloride hydrate, tincture of iodine, and carbolic acid, he touched the wound with it, and advised the patient that he saw no cause for apprehension of serious danger, but that he should not move about more than necessary. Deceased returned the next day, complained that he had been obliged to attend to some business, was suffering pain, and asked for something to relieve him. This was given, with directions, and with advice to remain at home. The day following the physician found him in a high fever, unable to pass urine with the parts surrounding the anus swollen and suffering great pain. Two days later Dr. Lewis was called in consultation, and both physicians testified on the trial that death resulted from blood poisoning due to infection from the fish bone or deceased's finger in removing it. Conceding the facts to be as recited, defendant contends that they do not show death to have been the result "of external, violent and accidental means." It is to be kept in mind that the means, not the injury, must have been of the nature stated.

In *Healy v. Association,* 133 Ill. 556 (25 N. E. 52, 9 L. R. A. 371, 23 Am. St. Rep. 637), death by poison accidentally taken was held to ·be by violent and external means, and a like conclusion was reached in *Paul v. Traveler's Ins. Co.,* 112 N. Y. 472 (20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758), where the assured died from the accidental inhalation of illuminating gas. In *American Accident Co. v. Reigart,* 94 Ky. 547 (23 S. W. 191, 21 L. R. A. 651, 42 Am. St. Rep. 374), while the assured was eating, a piece of meat lodged in the wind pipe, causing death, and this was held to be

through violent and external means.  *In Maryland Casualty Co. v. Hudgins* (Tex. Civ. App.), 72 S. W. 1047, the assured ate two raw oysters before discovering they were unsound, and his death was caused by these lodging in the upper part of the intestines, inflaming the mucous membrane, and causing the same to enlarge and obstruct the passage.  The eating was held to be accidental; the court quoting with approval from 1 Cyc. 249: "Where, however, the effect is not the natural or probable consequence of the means which produce it—an effect which does not ordinarily follow, and can not be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he can not be charged with a design of producing—it is produced by accidental means."  See definitions collected in *Carnes v. Ass'n,* 106 Iowa, 281.  In *Miller v. Fidelity and Casualty Co.,* (C. C.), 97 Fed. 836, the assured swallowed "certain hard, pointed, and resistant substances of wood," which so perforated the intestinal canal, the tissue of which had been weakened by illness, as to cause death, and the court declared these "to have been external, violent, and accidental means, for they originated outside of the body, and were accidentally violent, although the accidental effect took place within.  The assurance is not, by the first clause quoted, limited to an external effect, nor to one beginning at the surface.  The accidental operation of external means may be wholly internal."

These decisions and others which might be cited are sufficient warrant for a like decision in the case at bar.  They proceed on the theory that the design of this provision of the policy is to guard the insurer against a liability upon a fraudulent claim of the insured for indemnity for bodily injuries of which the only evidence might be the word of the person, and that, as the terms of the policy are to be construed most strongly against the insurer, the means coming from outside the body,

though the injury be internal, should be regarded as external. There was no evidence of how the fish bone came to be in the rectum, and therefore it is presumed that it reached there in the ordinary course of nature as other excretions—through the alimentary canal. If it was likely to cause injury, then, as the assured is presumed to have given heed to the instincts of self-preservation, it is not to be inferred that he swallowed the bone voluntarily. See *Stephenson v. Ass'n*, 108 Iowa, 641; *Tackman v. Brotherhood*, 132 Iowa, 64. But, regardless of whether in eating the fish he may have carelessly swallowed the bone and all, it is to be said that indigestible materials ordinarily pass out of the system without injury or inconvenience. That this bone caught in the rectum and inflicted the wound was so out of the ordinary course of things as to constitute an accident. The effect was one which does not ordinarily follow, could not reasonably have been anticipated, and can not be charged to have resulted from design. Manifestly, then, it was within the well-recognized definitions of accident. Nor is this conclusion obviated by the circumstance that death resulted from septicæmia or blood poisoning. Without the accidental wound by the fish bone, blood poisoning would not have ensued, and therefore that disease was incidental to the wound. *Central Accident Ins. Co. v. Rembe*, 220 Ill. 151 (77 N. E. 123, 5 L. R. A. (N. S.) 933, 110 Am. St. Rep. 235); 5 Am. & Eng. Ann. Cas. 155; *Martin v. Indemnity Co.*, 151 N. Y. 94 (45 N. E. 379); *Western Com. Trav. Ass'n v. Smith*, 56 U. S. App. 393 (85 Fed. 401, 29 C. C. A. 223); *Aetna Life Ins. Co. v. Fitzgerald*, 165 Ind. 317 (75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. Rep. 232, 6 Am. & Eng. Ann. Cas. 551); *Cary v. Ins. Co.*, 127 Wis. 67 (106 N. W. 1055, 5 L. R. A. (N. S.) 926, 115 Am. St. Rep. 997 (7 Am. & Eng. Ann. Cas. 484.)

III.   Our conclusion on the merits of the case obvi-

ates the necessity of reviewing the rulings on the motion

**4. PLEADINGS: motion to strike: prejudice.** to strike portions of the answer, and on the demurrer to other portions thereof; for, were any of these found to be erroneous, they could not have been prejudicial.

That the notice and proofs of loss were furnished in time appears from *Connell v. Iowa State Traveling Men's Ass'n,* 139 Iowa, 444, and the affidavits furnished

**5. ACCIDENTAL DEATH: affirmative proof.** defendant constituted "affirmative proof in writing of the death and of its being the proximate result of external and accidental means." By affirmative proof is meant such evidence of the truth of the matters asserted as tend to establish them, and this regardless of the character of the evidence offered. The clause exacting such proof as a condition precedent merely required the matters mentioned to be shown affirmatively; that is, that the beneficiary make a *prima facie* showing that death had occurred and had resulted as stated. This was done.—*Affirmed.*