## PEOPLES LIFE INSURANCE COMPANY v. MENARD.

[No. 18,435. Filed February 19, 1954. Rehearing denied March 31, 1954. Transfer denied June 24, 1954.]

*Robert K. Ryan* and *Clyde Hartzell*, both of Frankfort, for appellant.

*Robison & Robison* and *Power & Power*, all of Frankfort, for appellee.

BOWEN, J.—This is an appeal from a judgment in an action to recover damages under an additional or double indemnity provision of a life insurance policy issued by the appellant on the life of appellee's deceased husband. Appellant paid appellee under the ordinary life provision contained in the policy, and the present action involves the claim for the additional indemnity provision under which appellant agreed to pay the beneficiary a sum over and above the ordinary life provision in the case of death resulting in direct consequence of bodily injuries effected solely and independently of all other causes through external, violent, and accidental means.

Issues were joined on appellee's complaint based on the insurance policy and alleging facts and circumstances of the death of decedent by which the appellee sought to establish that her cause of action was within the additional indemnity provision of the policy. The

appellant demurred to appellee's complaint on the grounds it did not contain facts sufficient to constitute a cause of action. The court overruled this demurrer, and issues were joined by the answer of appellant denying the allegations of appellee's complaint and asking judgment for costs. The cause was tried by a jury, and the jury found for the appellee and that the appellee recover from appellant the sum of $5,000. The court overruled appellant's motion for a new trial and this appeal followed. Sole error assigned for reversal is that the court erred in overruling appellant's motion for a new trial. Grounds of the motion for a new trial not waived, are that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Additional errors assigned in the motion for a new trial are that the court erred in giving certain instructions tendered by appellee, and the court erred in overruling appellant's motions for a directed verdict at the close of appellee's evidence and after the introduction of all the evidence.

The provisions of the policy which are germane to the questions raised in this appeal are as follows:

"Peoples Life Insurance Company of Frankfort, Indiana, hereby agrees to pay $5,000 . . . upon the receipt of due proof that the death of the insured . . . has resulted in direct consequence of bodily injuries effected solely and independently of all other causes through external, violent and accidental means and that such death occurred within ninety days from the date of the happening of the event which caused such injuries and of which, except in the case of drowning or internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body.

"It is further agreed that the additional benefit provided hereby shall not be paid if death shall result directly or indirectly from any of the following causes or risks, all of which are hereby ex-

cepted from the provisions hereof: (a) directly or indirectly from infirmity of mind or body from illness or disease . . ."

From the record it appears that appellee's decedent was a man thirty-one years of age and had excellent general health prior to the time of his death; he weighed approximately 180 pounds and was 5 feet 11 inches in height; his only illnesses and disability prior to the incident in question consisted of the removal of an eye and an appendectomy; and his health prior thereto had always been good; that he had no previous trouble with nausea or vomiting and had suffered no heart attacks or disabilities. On the day of his death the decedent had gone to the university for his studies in the morning, worked at a lumber company from 1 until 5 in the afternoon, returned to his home after 5 for his evening meal, which consisted of cubed boiled potatoes, cubed canned meat and spinach, bread, butter, coffee and cinnamon rolls. The family, consisting of his wife and baby, had the same food. After eating, the decedent drank his coffee and smoked a cigarette. Decedent's wife went outside the house for a few minutes and when she returned the decedent was not in the kitchen. His wife heard a noise which sounded like a hum which she did not pay much attention to and soon she heard a noise like a moan coming from the bathroom. She went to the bathroom and found the decedent lying on the floor, his feet toward the tub and his head toward the basin. He was lying on his back and half turned on his side toward the tub. He was unconscious and she got no response from him. A dark flush came over his face and his lips changed in color. About 18 inches from his head, near the basin, there was some vomit on the floor. There were two bruised marks on his face, one on each temple. His pants were down and it was

apparent he had intended to sit on the toilet. There was an unlighted cigarette between the toilet and the basin. It was determined by the medical testimony that the immediate cause of decedent's death was asphyxiation due to choking on regurgitated food and that such asphyxiation was caused by the accidental lodging in decedent's larynx of two small pieces of "Prem" meat measuring one centimeter by eight-tenths centimeter by one-half centimeter in size, and also some soft food material and some greenish material like spinach. There was moderate congestion of the mucous membrane of the larynx and trachea and the lung changes appeared secondary to the asphyxiation.

Since there is no apparent dispute in the record as to the immediate cause of decedent's death, we are called upon to determine whether the foregoing facts showed that decedent's death occurred through external, violent and accidental means in accordance with the provisions and conditions of the insurance policy providing for additional indemnity.

Indiana is in accord with the majority rule of other jurisdictions in this country that draw a distinction between the terms "accidental means" and "accidental death" or "accidental result." Our own decisions, with the weight of decisions of other courts, hold that an accident within the meaning of an accident insurance policy providing for liability on the death of the insured by accidental means must include the requirement that the means or cause of the death was accidental and though an accidental result may occur, it is not sufficient under this type of policy, but the means must be accidental. *Schmid* v. *Indiana, etc., Accident Assn.* (1908), 42 Ind. App. 483, 85 N. E. 1032; *Husbands* v. *Indiana, etc., Accident Assn.* (1924), 194 Ind. 586, 133 N. E. 130; *United States Casualty Co.*

v. *Griffis* (1916), 186 Ind. 126, 114 N. E. 83; *Hoosier Casualty Co.* v. *Royster* (1925), 196 Ind. 629, 149 N. E. 164; *Davis* v. *Jefferson Standard Life Ins. Co.,* 73 F. 2d 330 (C. C. A. 5th, 1934; 29 Am. Jur., Insurance, §941, p. 714, 166 A. L. R. 472.

In the case of *Hoosier Casualty Co.* v. *Royster, supra,* the court in holding certain means to be accidental stated: ". . . if, in the act which precedes the injury, something unforeseen, unexpected, or unusual occurs which produces the injury, then the injury has resulted through accidental means."

Applying the foregoing rule to the facts in the instant case it seems apparent that the jury could properly have concluded that the lodging of the food in the decedent's windpipe was the accidental means causing his death. If the regurgitation had been a perfectly normal process as it normally occurs, the decedent would have expelled the contents of his stomach in a perfectly normal manner and no unforeseen, unexpected or unusual contingency would have occurred, and decedent would not have suffered the asphyxiation which was the immediate cause of his death. Normal regurgitation results in no untoward, unforeseen happening as in the instant case. Here the food became lodged in the windpipe of the decedent creating a localized abnormal condition of the living body and resulted in his death. The accidental means, to-wit: the lodging of food, which was accidental and contrary to nature, thereby caused a perfectly normal healthy person to die.

Our Supreme Court in the case of *United States Casualty Co.* v. *Griffis, supra,* held that the voluntary eating of poisonous substances supposed to be edible mushrooms constituted an accidental means causing the death of decedent in that case.

The appellant relies strongly on the case of *International Travelers' Assn.* v. *Ross* (1927 Texas), 292 S. W. 193, involving regurgitation on facts somewhat similar to the case at bar. In that case the decedent died from a ruptured blood vessel which resulted from the act of vomiting. There was no external means nor unforeseen happening such as the lodging of food in the windpipe as in the instant case. In the instant case, if the food had been expelled to the outside of decedent's body or it had gone back to his stomach and still the insured would have died because of the failure of some bodily function there would have been no accidental means. However, here there was a mishap due to the mechanical action of food in that the same became lodged in his windpipe, thereby causing his death. The lodging of the food in the windpipe was an intervening agency of a violent character which was the proximate cause of his death, and an intervening agency within the doctrine and principles of the Indiana cases.

In *Gohlke* v. *Hawkeye Commercial Men's Assn.* (1924), 198 Ia. 144, 197 N. W. 1004, the insured strangled to death on dry sal hepatica which caused his epiglottis to have a spasm. This was held to be a violent, external and accidental means.

In *American Accident Company* v. *Reigart* (1893), 94 Ky. 547, 23 S. W. 191, the death of a person caused by a piece of beefsteak passing into the windpipe in eating was held to be a death received through external, violent and accidental means within the meaning of an accident insurance policy restricting the right of recovery to cases of death from such means.

A note in 30 L. R. A. (New Series 1911), p. 1181, discusses the case of *Jenkins* v. *Hawkeye Commercial Men's Assn.* (1910), 147 Ia. 113, 124 N. W. 199. In

this case a fish bone taken internally by the insured lodged in his rectum thereby causing the insured's death. The Supreme Court of Iowa held this to be a violent, external and accidental means within the provisions of the insurance policy in question. The note in L. R. A. referring to the Jenkins case states:

"The principle governing the decision in the above case, that death or bodily injury accidentally occasioned by a substance taken internally is caused by external means, is well established, as but one case . . . can be found which in any manner questions this proposition. In view of this unanimity of opinion, it is sufficient merely to cite the cases enunciating this rule of law, showing parenthetically the means of the death or bodily injury giving rise to the actions."

In 29 Am. Jur., Insurance, §991, p. 743, it is stated:

"Death or disability incident to the partaking of food or drink may result either from its mechanical action, causing choking or injury to the membranes, or directly from poisoning, or indirectly from disease. As would be expected, practically all the cases on the subject hold that death or disability resulting from the mechanical action of food or drink results from accidental means."

While the present case appears to be a case of first impression by the identical facts presented by the record in that regurgitation preceded the mechanical action of the food which lodged in the decedent's windpipe, on the reasoning and principles laid down in the decided cases and authorities it seems clear that decedent's death in the instant case occurred through external, violent and accidental means within the provisions of the insurance policy in question. All of the decided cases seem to turn on the question as to whether the proximate cause of death is the mechanical action of food.

There is no difference in principle in the mechanical action of food lodging in the windpipe and resulting in asphyxiation after regurgitation, in the absence of infirmity of mind or body from illness or disease, and the asphyxiation brought about by the mechanical action of food taken internally at the time it is first taken into the body.

The decision and judgment of the lower court is not contrary to law, and the lower court did not err in overruling appellant's motions for a directed verdict.

A further contention asserted by the appellant in this appeal is that the appellee did not sustain the burden of negativing that decedent's death did not result directly or indirectly from infirmity of mind or body from illness or disease. An examination of the evidence shows that the jury could reasonably have inferred that the insured in this case was not suffering from any infirmity of the mind or body from illness or disease, and the jury so found by its verdict and its answers to interrogatories.

There was also evidence in the record of visible contusions or wounds on the exterior of insured's body, proof of which was required by the terms of the policy.

The medical testimony and the autopsy protocol showed that the insured was free from any infirmity of mind or body from any illness or disease and that he was remarkably free from any abnormalities of any kind. He was, in fact, a man of strong physical characteristics, apparently well nourished and developed, and a young adult. He was unconscious for but a short period of time and his lungs indicated he died in a matter of minutes. We have a far different factual situation in the case at bar than in the case of *Prudential Ins. Co. of America* v. *Van Wey* (1945), 223 Ind. 198, 59 N. E. 2d 721, relied on by the appellant.

Appellant has predicated error upon the giving of plaintiff's (appellee's) instructions numbered 2, 5 and 8 over defendant's (appellant's) objections. Instruction No. 2 was as follows:

"An injury as applied to a personal injury to a human being, and as used in the insurance policy sued on herein, means hurt, damage or impairment and includes whatever lesion or change in any part of the system produces harm or pain or lessened facility of the natural uses of any bodily activity or capability."

The appellant's first objection to this instruction is that it limits the application of the definition of an injury as used in the insurance policy, and therefore apparently the objection is that the definition is not broad enough. If such is the case the instruction would be more favorable to the appellant, and it would not be harmed thereby. Further specifications of objections are that it is too broad and that it allows plaintiff (appellee) to prove other injuries than alleged in the complaint. Such instruction was not a mandatory instruction and is based generally upon the common dictionary definition of injury and upon the case of *Wasmuth-Endicott Co.* v. *Karst* (1922), 77 Ind. App. 279, 133 N. E. 609.

Complaint is also made of Instruction No. 5, which was as follows:

"A disease or illness or infirmity must be so significant that it would be characterized as such in the common speech of men."

Defendant's (appellant's) objection is that the instruction gives an erroneous standard to the jury in their determination of the existence of disease, illness or infirmity. The substance of this instruction was approved in the case of *Railway Mail Assn.* v. *Schrader* (1939),

107 Ind. App. 235, 19 N. E. 2d 887. While the feature of illness was absent in the Schrader case, reference was made to disease, defect or bodily infirmity "in the common speech of men." This instruction was not mandatory and was a fair statement of the law as the same has been approved in decided cases.

Appellant also complains of instruction No. 8 which was as follows:

> "If in the act which precedes the injury, though the act is intentional, something unusual, unforeseen and unexpected occurs, which produces injury, then the injury has resulted through accidental means."

The substance of this instruction has been approved in most of the Indiana decisions in which a similar question was presented. *Hoosier Casualty Co.* v. *Royster, supra; Elsey* v. *Fidelity, etc., Co.* (1918), 187 Ind. 447, 120 N. E. 42; *Schmid* v. *Indiana, etc., Accident Assn., supra.*

Each of the instructions complained of by appellant were not mandatory, and from an examination of the whole record it appears that the jury was properly instructed concerning the law applicable to the case, and that the case was fairly tried and a just result reached on the law and the evidence.

The judgment is affirmed.

Crumpacker, C. J., dissents.

Achor, J., dissents with opinion.

## Dissenting Opinion

Achor, J.—The insurance policy here involved provided for payment in event "of due proof that the death of the insured . . . has resulted in direct consequence of bodily injuries effected solely and independently of

all other causes through *external, violent* and *accidental* means."

I concur in the majority opinion that the evidence before us supports the fact of death by violent and accidental means. The authorities cited clearly support this conclusion. *United States Casualty Co.* v. *Griffis* (1916), 186 Ind. 126, 114 N. E. 83, 29 Am. Jur., Insurance, §991, p. 743.

However, in my opinion the evidence does not support the fact of injury and death through *external* means. This, by the explicit terms of the insurance contract, is made the first condition to liability.

Numerous cases are cited which, it is urged, support the conclusion that the decisive test of ability is whether the proximate cause of the death is the mechanical action of food. *United States Casualty Co.* v. *Griffis, supra; Gohlke* v. *Hawkeye Commercial Men's Assn.* (1924), 198 Ia. 144, 197 N. E. 1004; *Jenkins* v. *Hawkeye Commercial Men's Assn.* (1910), 147 Ia. 113, 124 N. W. 199; *American Accident Company* v. *Reigart* (1893), 94 Ky. 547, 23 S. W. 191. In my opinion the cases do not support a precedent as above asserted. An examination of these cases discloses that they all do affirm the principle that although the injury may be *internal,* the *means* which caused the injury must be *external.* In each of the above cited cases, the means of injury (the substance consumed, whether mushrooms, dry Salhepatica or a fish bone) was either, (1) in its external form or content, such that it was unnatural or dangerous for human consumption and, when consumed, was the proximate cause of the injury; *United States Casualty Co.* v. *Griffis, supra,* and cases cited, or (2) the means of injury was the direct and initial process of eating and attempting to swallow food (beefsteak). *American Accident Company* v. *Reigart, supra.*

618

Without approving the decision of the Kentucky case above, we do observe that the facts in that case and the case before us are clearly distinguishable. In the Kentucky case, the injury occurred while the food was in the process of entering into the body and, therefore, it might be rationalized that the injury was external, whereas, in this case, injury occurred while the food was being regurgitated from the inside of the body to the outside, and there was no evidence that the nature of the substance as it was consumed was the proximate cause of the regurgitation. I am unable to see how a conclusion that the injury in the former case can be considered as precedent that injury in the latter was also external.

NOTE.—Reported in 117 N. E. 2d 376.