**Georgie W. McCALLUM, Plaintiff,**

v.

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.**

**Civ. A. No. 2647.**

United States District Court
E. D. Virginia,
Norfolk Division.
July 31, 1959.

**4**

Goldblatt & Lipkin, Paul M. Lipkin, Norfolk, Va., for plaintiff.

Willcox, Cooke, Savage & Lawrence, Wm. P. Dickson, Jr., Norfolk, Va., Christian, Barton, Parker & Boyd, A. C. Epps, Richmond, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

Plaintiff, the beneficiary under three life insurance policies issued by defendant insuring the life of Claude S. McCallum, has instituted this action to recover under the double indemnity provisions of said contracts. The defendant has paid the principal death benefits, but declines to pay the double indemnity. Two of the contracts contain identical language; the third contract is worded differently.[1]

---

1. (a) The pertinent portions of #3,949,-732 and #3,949,733 are:

"The Double Indemnity will be payable upon receipt of due proof that the Insured died as a direct result of bodily injury effected *solely* through *external,* violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body * * *; provided that the Double Indemnity shall not be payable if death resulted * * * directly or indirectly from disease or bodily or mental infirmity."

(b) The pertinent portion of #6,061,-637 provides:

"The Company will pay to the beneficiary an additional amount equal to the face amount * * *, upon receipt * * * of due proof (1) that the Insured's death resulted directly from bodily injury caused solely by external, violent, and accidental means and independently of all other causes, (2) that the cause of death was one not mentioned in the next paragraph * * *.

"*Risk of Death Not Assumed*—Under this provision, the Company does not assume the risk of death caused or contributed to, directly or indirectly, by dis-

Motions for summary judgment have been filed by both parties. It is only necessary to discuss the defendant's motion and, for this purpose, the evidence introduced in support of, and in opposition to, the motion must be considered in the light most favorable to the plaintiff.

The insured was found dead on the early morning of December 7, 1956. Apparently he had arisen and entered the hall of his home for the purpose of adjusting the thermostat when he collapsed and, shortly thereafter, was found dead by the maid. An autopsy revealed an enlarged heart, and mucous and other foreign material in the trachea, bronchioles and bronchi. The diagnosis was acute aspiration of gastric contents to trachea, bronchi and bronchials; acute congestion of lungs; marked mucous and tracheal bronchitis; severe fatty infiltration of liver; hypertrophy of left heart; moderate coronary sclerosis; adiposity of heart; moderate arteriosclerosis of aorta; chronic gastritis; blood alcohol, *negative*. The summary of the autopsy was as follows:

"The autopsy revealed as cause of death aspiration of gastric contents into the trachea. Gastric contents were present in the mouth and nose. The demised was apparently an alcoholic with a fatty liver, though at the time of death no alcohol was found in the blood and incidental finding was hypertensive cardiovascular renal disease."

While it is undoubtedly true that the insured periodically drank to such an extent that he would become sick, and thereafter suffered "drying out" periods, the evidence discloses that he also went for long stages without indulging in any alcohol. For the purpose of the motion it must be assumed that the insured had consumed no alcoholic beverage for at least ten days prior to his death. The day prior to his death a physician had prescribed thorazine for the insured's upset stomach and diarrhea. He ate lunch and dinner with his family on December 6, at which time he was apparently feeling well. There is no indication that his sleep was disturbed that night.

Defendant contends that the death was not "as a direct result of bodily injury effected solely through external, violent and accidental means" and that the insured did not die "of accidental death independently and exclusively of all other causes". While the evidence points strongly to the fact that the insured was suffering from an existing disease or infirmity which, assuming arguendo an accident, jointly resulted in the death, this may present a jury question to ascertain whether the disease or infirmity had any causal connection with the death. Under the law in Virginia as stated in Crowder v. General Accident Fire & Life Insurance Corporation, 180 Va. 117, 21 S.E.2d 772, 774, it is said:

"* * * if the insured is afflicted with a disease or infirmity at the time an alleged accident occurs, which disease or infirmity proximately causes or substantially contributes to the death or injury resulting, such death or injury is not within the coverage of the policy which insures against death or bodily injury independently of all other causes by accident or accidental means."

Doubtful though it may be, the plaintiff is entitled to have the jury determine whether the infirmities were remote causes bearing no causal connection with the death.

The case, as presented by the motion, turns on the interpretation of the words "external means". Certainly if this matter is ultimately submitted to the jury, it would be incumbent upon the court to define this term. The defendant urges that the cause of death was the failure of the glottis [2] to function properly with the result that vomit was taken

ease, by bodily or mental infirmity, or by treatment or operation for disease or bodily or mental infirmity * * *."

2. The opening at the upper part of the larynx, between the vocal cords.

into the windpipe and bronchi. Plaintiff, on the other hand, contends that the cause or means of death was aspiration of vomitus, or suffocation on vomited matter. Undeniably, death caused by choking on food which, in an attempt to swallow it, accidentally passes into the windpipe is covered under a contract which provides for payment by reason of "external, violent and accidental means".

The ultimate question is the distinction, if any, between choking on food as it is being ingested, and choking on food reduced to matter as it is regurgitated from the stomach.

██ The word "external" is defined as "relating to the surface of the body" as applied in medical terms. Plaintiff may find some comfort in the anatomical definition which refers to "originating beyond the limits of an organ or limb". This Court does not believe that the anatomical definition can be accepted in the construction of the word "external" as here expressed. As was said in Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934, where the insured suffered a fatal sunstroke while playing golf:

"The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather, or other circumstances external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured."

It is clear from Landress that proof of an accidental *result* is insufficient to obtain coverage. By dictum it is suggested that there must be something foreign or "external" to the insured's own body. Of course, the Court was not concerned with a death resulting from the failure of a particular part of the body and, for this reason, it is recognized that the effect of the language must be limited.

Two cases, apparently presenting divergent views, are cited from Texas and Indiana. Both are the decisions of inter-

mediate courts. In Peoples Life Insurance Co. v. Menard, 124 Ind.App. 606, 117 N.E.2d 376, 380, the insured was 31 years of age, in good health, with no prior disability. He had no prior trouble with nausea or vomiting. On the day of his death he had gone to work, returned home after 5 o'clock, and ate dinner with his family. He later entered the bathroom where his wife, after hearing a noise, found him lying unconscious on the floor. There was vomit on the floor about 18 inches from his head. The medical evidence established the immediate cause of death to be asphyxiation due to choking on regurgitated food caused by the accidental lodging in the larynx of two small pieces of "Prem" meat, as well as some soft food material and greenish material resembling spinach. There was moderate congestion of the mucous membrane of the larynx and trachae. The lung changes appeared secondary to the asphyxiation.

With two judges dissenting, the Indiana court upheld a judgment for the plaintiff. While much of the discussion concerns the distinction between "accidental means" and "accidental result"—a point not presently of importance in the instant case—the crux of the case lies in the following statement:

"All of the decided cases seem to turn on the question as to whether the proximate cause of death is the mechanical action of food. There is no difference in principle in the mechanical action of food lodging in the windpipe and resulting in asphyxiation after regurgitation, in the absence of infirmity of mind or body from illness or disease, and the asphyxiation brought about by the mechanical action of food taken internally at the time it is first taken into the body."

With this latter statement this Court is not in accord. The Indiana court has, in substance, held that any death caused by suffocation on vomited matter is an accidental death through "external" means, irrespective of how long the food has remained in the stomach and has

been reduced to other matter. An analysis of the Menard case points to the fact that the Indiana court at all times had in mind that the particles of food actually lodged in the windpipe, where it is said:

"In the instant case, if the food had been expelled to the outside of decedent's body or had gone back to his stomach and still the insured would have died because of the failure of some bodily function there would have been no accidental means. However, here there was a mishap due to the mechanical action of food in that the same became lodged in his windpipe, thereby causing his death." [124 Ind.App. 606, 117 N.E.2d 379.]

 In the case at bar the substance causing the death of Claude S. McCallum was not food. True, a portion of it may have been food at one time, but its substance had so changed that it could no longer be classified in that category. There was no mechanical lodging of food in the windpipe.

But if the Menard decision intended to go so far as a portion of its opinion may indicate, the case has been severely criticized in Radcliffe v. National Life & Accident Ins. Co., Tex.Civ.App., 298 S.W.2d 213, 217, where a baby met his death by reason of aspiration of vomitus. Assuming that the vomiting was accidental, and that the failure of the glottis was likewise accidental, the court said in its opinion:

"If it be contended that the aspiration or sucking in of the vomitus into the lungs was an independent cause or agency of the asphyxiation which produced death, still it cannot logically be contended that such aspiration was external. Accidental it may have been, but external it clearly was not."

In her argument, plaintiff tacitly concedes that the Radcliffe case is directly in point. She argues, however, that Menard affords the more logical reasoning. To the extent that Menard may support

an "external means" where food has passed into the stomach and regurgitated after changing into matter, this Court disagrees. The substance, as contained within the stomach, was inside the body and on its way outside during the vomiting process. This, in no sense, constitutes an "external means".

While not especially applicable to the facts here presented, the language of Judge Parker in Lyon v. Travelers Protective Association, 4 Cir., 25 F.2d 596, is worthy of note on the question of "external means".

If called upon to instruct the jury on the interpretation of what is meant by the words "external means", it would be incumbent upon this Court to find, under the uncontradicted facts, that the insured did not die from injuries solely through "external means", even though it may be assumed for the purpose of argument that the death was violent and accidental.

The defendant's motion for summary judgment must be sustained.