[Civ. No. 19986.   First Dist., Div. Three.   Nov. 5, 1962.]

BARBARA E. SPOTT, Individually and as Coexecutrix, etc., et al., Plaintiffs and Respondents, v. EQUITABLE LIFE INSURANCE COMPANY OF IOWA, Defendant and Appellant.

230

Knight, Boland & Riordan, John H. Riordan, Burton L. Walsh and Richard J. Kilmartin for Defendant and Appellant.

Stark & Champlin, Carl E. Simon, Jr., and Ralph J. Moore, Jr., for Plaintiffs and Respondents.

DRAPER, P. J.—This case requires construction of life insurance policy provisions calling for additional indemnity if death of the insured resulted from "bodily injuries effected solely through external, violent and accidental means." Plaintiffs are beneficiaries of two policies upon the life of one Spott in the aggregate face amount of $75,000. That amount has been paid, and only the provision for payment of $25,000 additionally is here in issue. Judgment was for plaintiffs and defendant appeals.

The body of decedent was found shortly after 2 p. m. in the bedroom of a motel apartment. Autopsy fixed time of death at approximately 3 a. m., and cause of death as "asphyxia due to bronchial aspiration of regurgitated gastric contents." Blood alcohol content was .246 per cent. There is medical evidence that irritation of the stomach by alcohol caused the vomiting, which brought into the throat partially digested stomach contents. These were in a semiliquid or mushy state. There is no evidence of the presence of any wholly undigested pieces of food. A muscle, the epiglottis, serves to close the entrance to the trachea, or windpipe, when food or drink is being swallowed, and to open it for breathing. These are reflex actions. In decedent's case, however, the alcohol he had consumed affected the central nervous system to the extent of slowing or impeding such reflexes. As a result, the glottis remained open, despite the presence of vomitus in the throat. When decedent took a breath the semiliquid material was

sucked into the bronchial tree, blocking the air passages and causing suffocation.

These facts are set forth in the findings, and are not disputed. The sole question is whether they show that death resulted from "bodily injuries effected solely through external, violent and accidental means." We have concluded that there was no external means of death here.

In a broad sense, it is semantically possible to view every cause of death as internal. Although the inducing cause be a blow or a bullet, the ultimately effective cause of death is the cessation of functioning of some vital organ, as the heart or lungs. At the other extreme, it may be argued that a great many deaths result from originally external causes, as by the introduction into the system of infection of any sort, long-term dietary excesses, smoking habits, etc. Obviously, neither of these extremes may be resorted to in interpretation of the policy language. Rather, we must look to the normal interpretation of the words used.

No California decision is directly in point, although general guides are to be found in a number of cases (e.g., *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462 [156 P. 1029, LRA 1916E 1196]; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800 [147 P. 1175]; *Horton* v. *Travelers' Ins. Co.*, 45 Cal.App. 462 [187 P. 1070]). These guides are, however, difficult of application to the facts here, as evidenced by the reliance of both parties on the same authorities, each emphasizing different language thereof. ■ Application of the term "accidental means" must turn upon the facts of the particular case (*Moore* v. *Fidelity & Casualty Co.*, 203 Cal. 465, 473 [265 P. 207, 56 A.L.R. 860]), and it is apparent that a like rule applies to the term "external means."

■ Four cases from other jurisdictions do, however, directly determine application of like policy provisions to deaths resulting from aspiration of regurgitated material. In one (*Peoples Life Ins. Co.* v. *Menard,* 124 Ind.App. 606 [117 N.E.2d 376]) a divided court affirmed judgment requiring payment by the insurer. The opposite conclusion has been reached in three decisions (*Radcliffe* v. *National Life etc. Co.* (Tex. Civ. App.) 298 S.W.2d 213; *McCallum* v. *Mutual Life Ins. Co. of New York,* 274 F.2d 431, affirming 175 F.Supp. 3; *Towner* v. *Prudential Ins. Co. of America* (La.App.) 137 So.2d 449). Each rejects the reasoning of the majority in *Menard,* and finds the dissent in that case more persuasive. We agree.

A different result might well be reached had food, in the process of being swallowed, lodged in the glottis and caused strangulation. There it could be argued that the food was an external element, still in the course of entry into the body. Here, however, the regurgitated material had been in the digestive tract for some time. In the digestive process, it had lost its identity as either solid or liquid food. It had become "internal" quite as much as substances, far earlier consumed, which had been transmuted by bodily processes into flesh or bone.

Nor is our view altered by the fact that alcohol contributed to decedent's nausea and did slow the reflexive action of his epiglottis. These effects flowed from knowing consumption of alcoholic beverages. The record indicates that decedent was not unfamiliar with such potations. There is no remote suggestion that he imbibed liquor mistakenly, assuming it to be another liquid. Even his last drink was taken some time before the fatal regurgitation and, like the food, was in the process of digestion. Strangulation resulting from sudden nausea caused by mistaken consumption of some noxious substance is not the problem here presented.

In view of our determination that the death did not result from injury effected by external means, it is unnecessary to consider whether such means were violent and accidental.

Judgment reversed, with directions to the trial court to enter judgment for the defendant.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied November 26, 1962, and respondents' petition for a hearing by the Supreme Court was denied January 3, 1963.