**David A. WOMMACK, Plaintiff,**

v.

**SHENANDOAH LIFE INSURANCE COMPANY, a Corporation, Defendant.**

**CIV78–4018.**

United States District Court, D. South Dakota, S. D.

July 24, 1979.

Richard L. Johnson and William F. Clayton, Sioux Falls, S. D., for plaintiff.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant.

MEMORANDUM DECISION

NICHOL, Chief Judge.

In this court trial plaintiff Wommack, a citizen of South Dakota, is suing Shenan-

doah Life Insurance Co., a Virginia corporation, under the double indemnity Accidental Death and Dismemberment provision of his wife's group life insurance policy. This policy provision promises to pay the plaintiff $17,500 if death should occur from "bodily injuries solely through violent, external and accidental means."

Mrs. Wommack died on August 10, 1977. On this evening, Mrs. Wommack and her husband, the plaintiff in this action, had been drinking beer and conversing with a neighbor. Mrs. Wommack had also made sandwiches of prepared meat. Mrs. Wommack with a sandwich in her hand, excused herself to go upstairs. The plaintiff after escorting the neighbor to the door was called upstairs by one of the Wommack children. There he found his wife face down and unconscious on the hallway floor. The plaintiff removed some material from his wife's mouth and began resuscitation efforts. Neither the plaintiff nor the paramedics who arrived could revive the plaintiff's wife and she was pronounced dead at the hospital. The evidence indicates that she died from asphyxiation when material described as pink-tan, friable debris filled her left main bronchus.

The main issue presented to the court is whether the deceased died from external means within the terms of the policy. The court agrees with the majority of reasoned authority that the applicability of the term external to describe the means by which Mrs. Wommack died is dependent upon whether the aspirated material causing her asphyxiation had been swallowed and regurgitated from the stomach or not swallowed at all. If the substance was within the stomach and on its way out it is internal; if the substance was choked upon as it was being ingested it is external. *McCallum v. Mutual Life Insurance Co.*, 175 F.Supp. 3 (E.D.Va.1959), aff'd per curiam 274 F.2d 431 (4th Cir. 1960); *Jones v. Liberty National Life Insurance Co.*, Ala., 357 So.2d 976 (1978); *Stowmatt v. Volunteer State Life Insurance Co.*, Fla.App., 176 So.2d 563 (1965); *Spott v. Equitable Life Insurance Co.*, 209 Cal.App.2d 229, 95 Cal. Rptr. 782, 98 A.L.R.2d 315 (1962); *Radcliffe*

*v. National Life and Accident Insurance Co.*, Tex.Civ.App., 298 S.W.2d 213 (1957); 98 A.L.R.2d 318. Cf: *Commercial Insurance Co. v. Orr*, 379 F.2d 865 (8th Cir. 1967). (This case involved choking on vomitus under a policy which provided benefits if death was from accidental bodily injury and indicated a result favorable to defendant if the policy had required death due to *external*, violent, and accidental means.)

■ The Shenandoah Life Insurance Company defended on the theory that the plaintiff could not carry the burden of proving that death was due to external means under the policy. The burden is on the plaintiff to show by a preponderance of the evidence that Mrs. Wommack's death was caused by external, violent, and accidental means before he recovers the double indemnity benefits. *Lohman v. General American Life Insurance Co.*, 478 F.2d 719 (8th Cir. 1973), cert. denied 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107; *Svenson v. Mutual Life Insurance Co.*, 87 F.2d 441 (8th Cir. 1937). The rule of construction that favors the insured has no application to the plaintiff's burden of proof where the language is clear and unambiguous as it is in this case. *D & P Terminal, Inc. v. Western Life Insurance Co.*, 368 F.2d 743 (8th Cir. 1966). The policy will be enforced according to its terms as written and plaintiff will recover only if he has proven that death was caused by external means.

■ The court finds that the evidence presented by the plaintiff is insufficient to prove that the material lodged in Mrs. Wommack's windpipe was food rather than regurgitated material. The plaintiff's main witness in this regard was Dr. Schultz, a pathologist and the Minnehaha County Coroner. After comparing microscopic slides of the material lodged in decedent's throat and slides of prepared meat, Dr. Schultz was unable to conclude whether the material found in the bronchus was aspirated vomitus from the stomach or food that lodged as it was being eaten. He stated that both explanations were possible. His lack of certainty arose from the fact that

prepared meat in its normal state lacks cross striations. The cross striations in other types of meat would show that the digestive process had not begun. With prepared meat there was nothing to show that the digestive process had not begun.

Dr. Schultz also provided the court with explanations as to why Mrs. Wommack might have regurgitated. He suggested alcoholic intoxication. The decedent's blood alcohol level of .19% in view of her large size indicated that the decedent had no less than six beers during the evening. He also suggested inflammation of the stomach and duodenal linings as possible explanations of regurgitation. The autopsy summary contained in the Laboratory of Clinical Medicine Report[1] indicates that Mrs. Wommack's asphyxiation was due to aspiration of "stomach contents into the tracheo bronchial tree probably second to acute alcoholic intoxication."

The court is unable to conclude from the evidence presented that Mrs. Wommack's death resulted from aspiration of food as it was being eaten. Accordingly, the plaintiff has failed to sustain his burden of proving that the death of his wife was due to external means. The court therefore concludes that the refusal to pay double indemnity benefits to the plaintiff was proper.

The foregoing shall constitute the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. Judgment will be entered for the defendant.

---

[1]. The report was prepared by Paul Newby, physicians' assistant under Dr. Schultz and the person who performed the autopsy.