[Civ. No. 47062. First Dist., Div. One. Mar. 23, 1982.]

GRACE SPAID, Individually and as Executrix, etc., Plaintiff and Appellant, v.
CAL-WESTERN STATES LIFE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

C. L. Keck for Plaintiff and Appellant.

Richard J. Kilmartin and Knight, Boland & Riordan for Defendant and Respondent.

**OPINION**

**RACANELLI, P. J.**—On appeal from a judgment of nonsuit, we consider whether the evidence presented a question of fact under an insuring agreement providing for payment of accidental death benefits for injury sustained as a result of "external means."[1] We conclude that under applicable principles of law, the order of nonsuit was erroneous requiring reversal.

The record discloses the following: Decedent was found dead by the side of his bed at approximately 11 p.m. on December 29, 1972. A small pool of vomitus and an undigested piece of steak one-half inch in diameter, were found near the body. The autopsy report listed the cause of death as asphyxia due to aspiration of stomach contents. Earlier that

---

[1]The relevant policy provisions provided coverage if the insured sustained bodily injuries "solely through violent, external and accidental means.. " Since respondent virtually concedes that the insured's death was violent and accidental (cf. *Hargreaves* v. *Metropolitan Life Ins. Co.* (1980) 104 Cal.App.3d 701, 705 [163 Cal.Rptr. 857]), the crucial injury focuses upon whether death was caused by *external means*.

evening, decedent appeared to choke on some meat during dinner. After he had retired about 9:30 p.m., his daughter observed him coughing very badly. Dr. Berry, who had been summoned for assistance and pronounced Spaid dead, testified that death was caused by asphyxiation due to the lodging of a piece of meat in decedent's windpipe; he further testified that such undigested meat constituted a "foreign body" as contrasted to a natural internal substance.

Relying principally on *Spott v. Equitable Life Ins. Co.* (1962) 209 Cal.App.2d 229 [25 Cal.Rptr. 782, 98 A.L.R.2d 315], the trial court concluded that death had resulted from regurgitated *internal* matter as distinguished from external means.

## I.

■ It is well established that on appeal from a nonsuit judgment, we must indulge every legitimate inference which can be drawn from the evidence in plaintiff's favor, and we will sustain the trial court's ruling only if there is no evidence to support a jury verdict for the plaintiff. (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]; *Ewing v. Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155]; *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

■ It is equally settled that in interpreting insurance policies, stringent rules apply to protect the legitimate expectations of average laymen. (*Estate of Coate* (1979) 98 Cal.App.3d 982, 990 [159 Cal.Rptr. 794].) Further, any ambiguity found in an insurance contract is to be resolved against the insurer. (*Insurance Co. of North America v. Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412 [149 Cal.Rptr. 292, 583 P.2d 1335]; *Safeco Title Ins. Co. v. Moskopoulos* (1981) 116 Cal.App.3d 658, 665 [172 Cal.Rptr. 248].) And while an ambiguity cannot be found from a strained interpretation of the policy's terms, nevertheless, the existence of an ambiguity or uncertainty is to be determined from a lay person's perspective; and where semantically possible, the policy will be construed to achieve its manifest objective of indemnifying the insured against the type of losses to which the policy relates. (*Stewart v. Estate of Bohnert* (1980) 101 Cal.App.3d 978, 985 [162 Cal.Rptr. 126]; *Estate of Coate, supra,* 98 Cal.App.3d 982, 988.)

■ Here, the sole issue is the scope of coverage; consequently the burden is on the insured to establish that death resulted from a cause

and in a manner covered by the policy. (*National Life & Accident Ins. Co.* v. *Edwards* (1981) 119 Cal.App.3d 326, 335 [174 Cal.Rptr. 31]; *Executive Aviation, Inc.* v. *National Ins. Underwriters* (1971) 16 Cal. App.3d 799, 806 [94 Cal.Rptr. 347]; *Romero* v. *Volunteer State Life Ins. Co.* (1970) 10 Cal.App.3d 571, 579-580 [88 Cal.Rptr. 820].) But if the ambiguity "'relates to the extent or fact of coverage . . . the language [of an insurance policy] will be understood in its most inclusive sense, for the benefit of the insured.'" (*Insurance Co. of North America* v. *Sam Harris Constr. Co., supra*, 22 Cal.3d 409, 413; see also *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].)

■ Applying such settled principles, we conclude that substantial evidence existed to support an inference that death was caused by external means consistent with the required construction of the insuring agreement.

■ In the only reported California decision, Division Three of this court concluded (in an analogous factual setting) that death by asphyxia due to bronchial aspiration of regurgitated gastric contents was the product of *internal* means since the regurgitated material, due to the digestive process, "had lost its identity as either solid or liquid food. . . ." (*Spott* v. *Equitable Life Ins. Co., supra*, 209 Cal.App.2d 229, 230-232; accord: *Wommack* v. *Shenandoah Life Ins. Co.* (D.S.D. 1979) 473 F.Supp. 757; *McCallum* v. *Mutual Life Insurance Co. of New York* (E.D.Va. 1959) 175 F.Supp. 3, affd. *per curiam* (4th Cir. 1960) 274 F.2d 431; *Jones* v. *Liberty Nat. Life Ins. Co.* (Ala. 1978) 357 So.2d 976; *Weaver* v. *Home Security Life Insurance Company* (1973) 20 N.C.App. 135 [201 S.E.2d 63]; contra: *Peoples Life Ins. Co.* v. *Menard* (1954) 124 Ind. App. 606 [117 N.E.2d 376]; *Life Insurance Company of Georgia* v. *Thomas* (1974) 133 Ga.App. 134 [210 S.E.2d 250].) But, contrary to respondent's assertion, *Spott* is factually distinguishable insofar as it relies on a finding of *no* evidence of wholly undigested pieces of food. (*Id.*, at p. 230.)

■ Initially, we question whether a logical distinction can be made on the basis of the directional trajectory of the trauma-inducing substance of external origin. Whether the material was inside the body and on its way outside or in a state of descending transit is irrelevant to the foreign source of origin. Rather, the significant determination should pivot on whether the obstructing matter was undigested and thus re-

tained its external characteristic as distinguished from digested food matter which had lost its identity and become part of the internal body substances.[2] (*Spott v. Equitable Life Ins. Co., supra,* 209 Cal.App.2d 229, 232; *McCallum* v. *Mutual Life Insurance Co. of New York, supra,* 175 F.Supp. 3, 7, affd. *per curiam* (4th Cir. 1960) 274 F.2d 431.)

But, assuming the viability of the *Spott/McCallum* analysis, nevertheless a question of fact is clearly presented whether decedent's death due to asphyxia resulted from choking on undigested food (an external substance) or on his own vomitus (an internal substance).

On the evidence presented, the jury could reasonably have found that death was caused by the externally introduced and undigested piece of steak which had lodged in decedent's windpipe resulting in asphyxia. Accordingly, the failure to submit such material factual issue for jury determination constituted prejudicial error.

Judgment reversed.

Grodin, J.,* concurred.

**NEWSOM, J.**—I respectfully dissent.

While the question is a close and conceptually difficult one, given the precise terms of the insurance contract, I do not think it can be said that the *sole* means of death here was "external," for appellant's alcoholic ingestion, and related stuporous condition, clearly contributed materially to the sad accident which led to the present claim. (*Spott* v. *Equitable Life Ins. Co.* (1962) 209 Cal.App.2d 229, 232 [25 Cal.Rptr. 782, 98 A.L.R.2d 315]; *Wommack* v. *Shenandoah Life Ins. Co.* (D.S.D. 1979) 473 F.Supp. 757; *McCallum* v. *Mutual Life Insurance Co. of New York* (E.D.Va. 1959) 175 F.Supp. 3, affd. *per curiam* (4th Cir. 1960) 274 F.2d 431; *Jones* v. *Liberty Nat. Life Ins. Co.* (Ala. 1978) 357 So.2d 976; *Weaver* v. *Home Security Life Insurance Company* (1973) 20 N.C.App. 135 [201 S.E.2d 63]; *Strowmatt* v. *Volunteer State Life Insurance Co.* (Fla. 1965) 176 So.2d 563; *Radcliffe* v. *Na-*

---

[2]Suppose, for example, the decedent had choked on some other indigestible substance such as a toothpick, a marble or a coin. Should the courts fashion two separate rules depending upon whether the foreign object was being swallowed for the first time or being vomited back out? We think not. (See *Peoples Life Ins. Co.* v. *Menard, supra,* 117 N.E.2d 376, 380.)

*Assigned by the Chairperson of the Judicial Council.

*tional Life & Accident Insurance Co.* (Tex.Civ.App. 1957) 298 S.W.2d 213.)

I regard the reasoning of the court in *McCallum* v. *Mutual Life Insurance Co. of New York, supra,* 175 F.Supp. 3, 7, as particularly persuasive, for here, as there, the substance which choked appellant "was inside the body and on its way outside during the vomiting process . . . in no sense . . . an 'external means.'"

I would affirm the judgment.

A petition for a rehearing was denied April 22, 1982. Newsom, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied June 9, 1982. Richardson, J., did not participate therein.