**CENTURY COMPANIES OF AMERICA f/k/a Lutheran Mutual Life Insurance Company, An Iowa Insurance Corporation, Appellee,**

v.

**Donna M. KRAHLING, Appellant.**

No. 91–526.

Supreme Court of Iowa.

May 13, 1992.

Thomas J. Whorley and Keith G. Thompson of Wolff, Whorley, De Hoogh & Thompson, Sheldon, for appellant.

Bradley Howe of Sackett, Sackett & Howe, P.C., Spencer, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

The narrow issue on this appeal is whether the failure of an artificial heart valve constitutes an accidental death under double indemnity provisions of a life insurance policy. The district court held that it did not, and we agree.

The parties provided the district court with an agreed statement of facts that shows the following. Wayne E. Krahling had a prosthetic aortic heart valve surgically implanted in April 1982. In May 1989, the valve malfunctioned, and Krahling was taken to a hospital, where he died three days later. The cause of death was "cardiac arrest and central nervous system hypoxia [lack of oxygen]" caused by the failure of the prosthetic heart valve.

Krahling was insured under two policies with Lutheran Mutual Life Insurance Company, now known as Century Companies of America. Each of the policies had face benefits of $10,000 with double indemnity provisions in the case of accidental death defined by the policies to be "the result of bodily injury caused directly and independently of all other causes by external, violent, and purely accidental means...."

Century Insurance filed a declaratory judgment petition, after paying the face benefits of the policies, to determine whether it was liable to pay double indemnity under the policies. The district court held that the prosthetic heart valve was no longer an "external" object but, having been in place for seven years, had been internalized within the insured's body. Double indemnity benefits were denied.

The double indemnity implications of prosthetic failures are new to the law. At the time these policies were purchased, in 1952 and 1961, prosthetic heart devices were unknown. There are, however, analogous cases involving death caused by foreign material, usually by choking. Under these cases, if a foreign material causes death through mechanical action as it is being attempted to be taken into the body, this is an external cause of death. Double indemnity benefits have been allowed by this court in such a case. *See, e.g., Jenkins v. Hawkeye Commercial Men's Ass'n*, 147 Iowa 113, 117–18, 124 N.W. 199, 200 (1910) (fish bone lodged in intestine); *see also Spaid v. Cal–Western States Life Ins. Co.*, 130 Cal.App.3d 803, 182 Cal.Rptr. 3 (1982); *American Accident Co. v. Reigart*, 94 Ky. 547, 23 S.W. 191 (1893); *Murphy v. Continental Casualty Co.*, 269 So.2d 507 (La. App.1972). *See generally* Annotation, *Accident Insurance: Death or Disability Incident to Partaking of Food or Drink as Within Provision as to External, Violent, and Accidental Means*, 29 A.L.R.4th 1230, 1256 (1984) [Annotation, *Accident Insurance* ].

On the other hand, if food is taken into the body, digested, and regurgitated causing suffocation, this has been held not to be an external cause of death. The reason is

that the body has internalized the substance that has, by then, lost its previous character. *See, e.g., Jones v. Liberty Nat'l Life Ins. Co.*, 357 So.2d 976 (Ala.1978); *Spott v. Equitable Life Ins. Co.*, 209 Cal. App.2d 229, 25 Cal.Rptr. 782 (1962); *Weaver v. Home Sec. Life Ins. Co.*, 20 N.C.App. 135, 201 S.E.2d 63 (1973); *Christensen v. Prudential Ins. Co.*, 235 Or. 93, 384 P.2d 142 (1963); *Radcliffe v. National Life & Accident Ins. Co.*, 298 S.W.2d 213, 216 (Tex.Civ.App.1957) (death by suffocation by regurgitated food). *See generally* Annotation, *Accident Insurance*, 29 A.L.R.4th at 1244–49.

In the only case found that involves the failure of prosthetic heart valve, the Arizona Court of Appeals relied on these analogous cases in holding that death due to the failure of an artificial valve did not qualify for double indemnity benefits under a policy with wording identical to the policies in this case. The court reasoned that

> [t]here is general agreement in the case law that death may be said to result from external means where that means is initially external to the person, but subsequently acts internally. It is possible, however, for an agent that was once external to become internal, as in the case of the ingested food which is regurgitated, causing strangulation. We believe that in the case of an internal prosthetic device, such as the mitral valve here, an even stronger case for internalization is presented. [The life insurance beneficiaries] themselves argue that the implanting of the prosthesis had been completed and that the substitute valve was successfully operating in place of the natural valve. We therefore believe that it had ceased to have the characteristics necessary to classify it as "external" with respect to [the insured].

*Cassidy v. Occidental Life Ins. Co.*, 123 Ariz. 562, 564, 601 P.2d 325, 327 (1979) (citations omitted).

While a prosthetic heart valve will never actually become a part of the body tissue, it will (and did in this case) become a functional part of the body. It was accepted by the body and performed the function of a

heart valve for seven years. So, while the valve had an external origin, it had become a part of the body function, and therefore, the cause of death was not by "external" means.

We agree with the district court that the death was not the result of "external, violent, and accidental means" within the meaning of the policy. Accordingly, we affirm.

AFFIRMED.