137 So.2d 449 (1962)
Helen TOWNER, Plaintiff and Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant and Appellee.
No. 463.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1962.
Rehearing Denied February 21, 1962.
Certiorari Denied March 28, 1962.
Camp, Palmer, Yelverton & Carwile, by Henry Yelverton, Lake Charles, for plaintiff-appellant.
Hall, Raggio & Farrar, by Thomas L. Raggio, Lake Charles, for defendant-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an action for accidental death benefits alleged to be due under a group life insurance policy, together with penalties and attorney's fees as provided in LSA-R.S. 22:657. After trial of the case on its merits the trial court rendered judgment in favor of defendant, rejecting plaintiff's demands, and plaintiff has appealed.
The trial judge in his excellent reasons for judgment has accurately stated the facts, and in our opinion he has correctly analyzed the law applicable to those facts. We, therefore, quote the major portion of his opinion and adopt it as our own, as follows:
"This suit presents the claim of Mrs. Helen Towner for accidental death benefits under a group life insurance policy issued by the defendant to her husband, Arthur Lloyd Towner, who died on June 12, 1960. Plaintiff claims the principal sum of $6,500.00, for alleged accidental death benefits, plus the additional sum of $6,500.00 as a penalty and for an attorney's fee. Plaintiff's petition shows that the defendant has paid the face value of the policy because of the death of her husband, but that it has not paid the accidental death benefit allegedly provided by the policy. The allegation is made that Mr. Towner died from asphyxiation due to aspiration of vomitus.
"Defendant admits the death of Mr. Towner, the payment of the face value of the policy, plaintiff's status as his widow and his beneficiary, but it denies the remaining allegations of plaintiff's petition.
"The case was submitted upon two stipulations made by the parties and filed in the record, the deposition of Dr. Charles L. Fellows, the original insurance policy and the briefs of counsel.
*450 "Pertinent provisions of the insurance policy relating to accidental death are, in part, as follows:
"* * * suffers the loss of life, sight or limb as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means, and if such loss occurs within ninety days after such injuries were incurred, the Insurance Company will, subject to the conditions, exclusions and reductions hereinafter stated, pay in one sum * * *
"`The insurance does not cover any loss which results from or is caused, directly or indirectly, by * * * disease or bodily or mental infirmity * * *'"
"Plaintiff alleges that she is entitled to accidental death benefits of the policy because of her husband's death "from asphyxiation due to aspiration of vomitus.' There are two principal matters for determination by the court. First, is whether or not the cause of death was asphyxiation due to aspiration of vomitus and, if such is determined as the cause of death, whether or not it entitles plaintiff to recover accidental death benefits under the provisions of the policy quoted above.
"The evidence establishes that, on June 12, 1960, Mr. Towner consulted Dr. Charles L. Fellows at about 8:00 P.M. and he was found to be suffering with a sore throat and tonsillitis. Dr. Fellows prescribed something for his pain and ordered an injection of penicillin streptomycin. Mr. Towner went home, and about fifteen minutes later, started vomiting, and Mr. Towner was brought back to the hospital and was fount to be quite short of breath and was vomiting very severely. Dr. Fellows immediately went to the hospital, found a large amount of vomitus in a basin there, said Mr. Towner was breathing with great difficulty and breathed only about twice and then expired. Dr. Fellows examined the vomitus and found food and some red material which appeared to be streaks of blood. His death occurred about 9:00 P.M.
"Dr. Fellows expressed the opinion that the cause of death was `accidental aspiration of vomitus caused by his tonsillitis or pharyngitis and apparently a gastro-enteritis, which is what produces the vomiting, usually.' On cross-examination, Dr. Fellows stated that acute pharyngitis and gastro-enteritis was apparently what caused the vomiting. He described the manner in which asphyxiation results from aspiration of vomitus and mentioned the fact that blockage of the trachea, with severe choking and strangling can cause a coronary or heart attack. He concluded with the opinion that `If you are not breathing, you are not getting oxygen and the vital organs are damaged, the heart, the brain, and either one or the other causes death, but the direct cause is the blockage of the trachea.' Dr. Fellows referred to an acute abcess of the tonsil which Mr. Towner had suffered from in 1959, which he expressed as one reason for Mr. Towner's consultation with him on the date of his death.
"The testimony of Dr. Harry S. Snatic is set forth in a stipulation of the parties. Dr. Snatic, as Coroner of Calcasieu Parish, was called to view Mr. Towner's body and executed a death certificate showing the cause of death as `a coronary occlusion.' Dr. Snatic later discussed the case with Dr. Fellows, the attending physician, and still expressed the opinion that the profuse vomiting was caused by a coronary attack. Dr. Snatic expressed the possibility that Mr. Towner might have aspirated vomitus as a terminal thing as he became unconscious, but he maintained his opinion that the death was the result of a coronary occlusion and not primarily because of aspiration of vomitus.
"Although there is a question as to whether the vomiting was caused by a coronary attack or a coronary attack resulted from the vomiting, the court concludes that Dr. Fellows, the attending physician who *451 was acquainted with Mr. Towner, was the best able to determine the cause of death in this case. He described the extreme difficulty that Mr. Towner had in breathing and the choking which he believes to be the result of blockage of the trachea, which he ascribed as the direct and immediate cause of death. Dr. Snatic admitted the possibility that Mr. Towner might have been asphyxiated by aspiration of vomitus `as a terminal thing.' There was no autopsy performed in the case. The court believes that the evidence establishes that the immediate cause of death was asphyxiation resulting from aspiration of vomitus, but that it has not been established that this immediate cause was independent of all other causes."

* * * * * *
"The court is * * * convinced that the death of Mr. Towner was not effected solely through external means. Consideration has been given to several cases cited in briefs submitted to the court, and the principal Louisiana case is Schonberg v. New York Life Insurance Company, 235 La. 461, 104 So.2d 171, which involved a death during surgery from an anaphylactic shock produced by a rare reaction from some component of the blood used in a transfusion. The court held that an insurance policy should be construed in its ordinary and popular sense, and that what the average man, under existing facts and circumstances, would consider as being unforeseen and unexpected, would be considered an accident, without any distinction between `accidental means' and `accidental results.' The court concluded that death was produced by accidental means within the meaning of the policy, as determined from the ordinary and popular meaning of the language used in the policy and allowed recovery. In the course of the opinion in the case, it was concluded that the loss must be produced by external, violent and accidental means and said: `In construing "external means," it is only necessary that the cause of death or injury be external to the person, though it acts internally.' There was no issue before the court in the Schonberg case about the externality of the means, as there was no dispute about the fact that the blood transfusion was an external means; as indicated above, the principal issue was whether or not the means was accidental or produced an accidental result.
"The opinion in the Schonberg case referred to the decision of the United States Supreme Court in Landress v. Phoenix Mutual Life Insurance Company, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934. The Landress case involved no question of `external means' as claim was made for accidental benefits in that case as a result of a sunstroke, which clearly was external to the person of the claimant.
"The court has considered Peoples Life Insurance Company v. Menard, an Indiana case reported in 124 Ind.App. 606, 117 N.E. 2d 376, which involved facts very similar to those at bar. The Indiana court held that regurgitated food had lodged in the larynx of the decedent resulting in his asphyxiation, and that death was the result of external, violent and accidental means within the provisions of the insurance policy. Mr. Menard had had no previous disease and was in good health at the time, so there was no possible question about other causes, although the opinion of the court mentioned the absence of any infirmity of mind or body as an important consideration in the case. The external means was described as the lodging of food in the windpipe, which resulted in asphyxiation. The court expressed the opinion that there was no difference in principle in the mechanical action of food lodging in the windpipe and resulting in asphyxiation after regurgitation, in the absence of infirmity of mind or body, and asphyxiation brought about by the mechanical action of food taken internally at the time into the body. There were three dissents to the majority opinion in the Menard case, and one of the judges rendered a dissenting opinion based upon the fact that death was not caused by external means, recognizing a distinction between a *452 blockage caused by the taking in of food at the time and a subsequent regurgitation of food. This court disagrees with the majority opinion in the Menard case.
"Another case cited is that of McCallum v. Mutual Life Insurance Company of New York, D.C., 175 F.Supp. 3, where death was caused as in the case at bar. It was recognized that the decedent in that case had an existing disease or infirmity, which may or may not have had a causal connection with the death, but it was concluded that this was a question for determination by the jury. A motion for summary judgment was before the court, which turned on the interpretation of the words `external means,' and it was recognized that death caused by choking on food, in an attempt to swallow same, which accidentally passes into the windpipe is the result of external, violent and accidental means; however, the opinion in that case discussed the Menard case, and expressed disagreement with the conclusion reached by the majority of the Indiana court on asphyxiation due to aspirated vomitus. The court concluded that the substance which lodged in the windpipe of Mr. McCallum was not food, that it may have been food at one time, that that its substance had so changed that it could no longer be classified in that category. Finally, in the McCallum case, the court decided that the substance, as contained within the stomach, was inside the body and on its way outside during the vomiting process, which did not constitute, in any sense, an `external means.' This court agrees with the rationale of the McCallum opinion.
"The court has also considered the case of Radcliffe v. National Life and Accident Insurance Company, a Texas case, Tex. Civ.App., 298 S.W.2d 213, where death was caused by asphyxiation due to aspiration of vomitus, as in the case at bar. The decedent was an infant, and the mechanics of vomiting and aspiration of the vomitus were described by the doctors in that case. The opinion in that case discussed the majority opinion of the Indiana court in the Menard case and disagreed with its findings. The Radcliffe opinion expressed the view that there was too much emphasis upon `the lodging of the food' in the Indiana case, and expressed the view that food was inert matter, incapable of imminent action, which could not be the sole cause of death in view of the fact that the sucking in or aspiration of the vomitus was a cause, which necessarily was internal rather than external. The court said:
"`If it be contended that the aspiration or sucking in of the vomitus into the lungs was an independent cause or agency of the asphyxiation which produced death, still it cannot logically be contended that such aspiration was external. Accidental it may have been, but external it clearly was not.'
The Radcliffe case appears to be directly applicable to the situation in the case at bar.
"For the reasons assigned, the court concludes that plaintiff has failed to establish her case, by a preponderance of the evidence, as she is required to do, and judgment is rendered in favor of the defendant against the plaintiff rejecting plaintiff's demands at her costs."
Counsel for plaintiff in his excellent brief has called our attention to the case of American Acc. Co. v. Reigart, 94 Ky. 547, 23 S.W. 191, 21 L.R.A. 65, 42 Am.St.Rep. 374 (Ky.App.1894), which case was not discussed by the trial judge in his reasons for judgment and may not have been considered by him. The Reigart case, counsel contends, supports the position taken by plaintiff here that Mr. Towner's death was brought about by external means. In that case the insured lost his life by eating a piece of beef steak which, as decedent was attempting to swallow it, accidentally passed into his windpipe choking him to death. By the terms of the policy the insurance was made payable for injury and death "through external, violent and accidental means, independently of all other causes." Substantially the same defenses were urged by defendant in that suit as are being urged by defendant here. The Court of Appeals *453 of Kentucky, however, permitted recovery under the policy, holding that the insured's death was caused by external means.
In the Reigart case, unlike the instant suit, asphyxiation and death occurred as food was being taken into the body. Mr. Towner's death, on the other hand, was caused by the aspiration of vomitus, which had been regurgitated and was composed of some food, some mucous and a small amount of blood. Dr. Fellows, the decedent's treating physician, testified that Mr. Tower vomited large amounts of "food and mucous," and that "there is always mucous in the stomach, it is just a normal vomitus." In explaining how death may result from asphyxiation due to the aspiration of vomitus, Dr. Fellows indicated that choking or asphyxiation may result if "mucous or food" is aspirated into the trachea. No autopsy was performed in this case, and the evidence does not indicate whether asphyxiation was brought about by the aspiration of food, which as some time prior thereto had been taken into the body, or by the aspiration of mucous, which we think could not be considered as having been taken into the body from external sources. If death resulted from the aspiration of mucous, or a substance containing some mucous and some food, then it cannot be said that the death resulted solely from external means. Moreover, the substance which the decedent aspirated actually had lost its identity as food, or as something which had been introduced into the body from the outside. Because of this distinction between the instant suit and the Reigart case we think the latter is not applicable here.
Although we feel that the death in this case was not brought about by external means, a different result might be reached in a case where death results from regurgitation and aspiration of vomitus brought about by sudden trauma or by the consumption of noxious substances. In such a case the proximate cause of death might be deemed to be from external means, as interpreted in Schonberg v. New York Life Ins. Co., discussed by the trial court supra, and the traumatic experience or the unintentional consumption of noxious substances would be deemed the efficient or predominant cause of death. De Belieux v. Travelers Ins. Co., 185 La. 620, 170 So. 14; Carnelious v. Louisiana Industrial Life Ins. Co., Orl., 18 La.App. 739, 138 So. 533; Richard v. Southern Farm Bureau Casualty Insurance Co., La.App. 3 Cir., 128 So.2d 806.
In view of our conclusion that there can be no recovery in this case because the death of Mr. Towner was not brought about by external means, it is not necessary for us to consider the other issues presented, particularly the questions of whether the death of the insured was caused by violent and accidental means, or whether the death resulted wholly or in part from other causes.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.