WATSON, Judge.
Plaintiff, Guaranty Bank & Trust Company of Alexandria, trustee of the minor children of Dr. George Alton Creed, filed this suit against defendant, National Life Insurance Company, to recover $50,000 accidental death benefits on a policy insuring Dr. Creed. Dr. Creed died at age 33 because of “regurgitation and mild aspiration of gastric contents.” (Tr. 14)
The trial court found Dr. Creed’s death to be accidental but not by external means and therefore not covered by the policy. Judgment was given for the defendant insurance company. We reverse.
Plaintiff has appealed, contending that the trial court erred:
(1) in its evaluation of the medical and lay testimony on the cause of death;
(2) in failing to apply Schonberg v. New York Life Insurance Co., 235 La. 461, 104 So.2d 171 (1958), which rejected highly technical distinctions in interpreting such policies; and
*909 (3) in misapplying Towner v. Prudential Insurance Company of America, 137 So.2d 449 (La.App. 3 Cir. 1962), certiorari denied, to decide that the death was not caused by external means in a different factual situation.
The pertinent policy provision states that double indemnity benefits are payable when death results:
“ . . . directly and independently of all other causes by violent, external and accidental means and evidenced by some mark or contusion visible on the exterior of the body or by internal injury visibly manifest on an autopsy;.”
The issue is whether Dr. Creed’s death is covered by this policy provision.
The certificate of death states that the nature of the injury is under investigation, and the autopsy protocol states that the death is unclassified.
John Michael Whaley, trust officer of the Guaranty Bank, testified that he applied to recover the benefits under the policy. Only the base amount of the policy, $50,000, was paid; the $50,000 accidental death benefit was not paid.
Mercedes Whitecloud, a biochemist and an acquaintance of Dr. and Mrs. Creed, testified that she went to the apartment where Dr. Creed’s body had been found on October 15 or a week and a half to two weeks after the death. At that time, the seals of the coroner’s office were intact and had to be broken. Dr. Creed had been in the process of moving into the apartment at the time of his death. Mrs. Creed was in the hospital for surgery. There were empty beer cans throughout the apartment and plates in the sink with partially rinsed off food. Dr. Creed’s body had been found in the bathroom and there was still a heavy odor there, so she did not enter the bathroom. Mrs. Whitecloud returned to the apartment on November 30 and examined the bathroom. The apartment was unchanged. There were remains of flesh, hair and blood in the bathroom. The only drugs present were a bottle of aspirin and a sample bottle of nasal spray. Mrs. Whitecloud said Dr. Creed liked beer but very much of it would make him sick; she had several times seen him regurgitate as a result of beer. On each occasion that Dr. Creed had three or four drinks he would get sick;, it was a joking matter among them. There were 60 or 70 empty beer cans in the apartment, all Falstaff.
Mrs. Micky Svebek Creed, a resident of Alexandria, Louisiana, testified that she and her late husband were legally separated at the time of his death after eleven years of marriage. They had three children, eleven and a half, ten and a half, and five years of age. Mrs. Creed last saw her husband on September 6, the day after her surgery. Her husband could not tolerate alcohol. After two or three drinks he would start throwing up and always tried to get to the bathroom to regurgitate. His favorite alcoholic beverage was beer.
Dr. Herbert Ichinose, stipulated to be an expert in the field of pathology, testified in deposition that he performed an autopsy on Dr. Creed on September 29, 1973. The autopsy showed advanced postmortem degeneration and indicated that death occurred from “regurgitation and mild aspiration of gastric contents.” Gastric contents were found in the air tubes, specifically the esophagus, the lingual bronchial system, and the trachea. Three hundred cc of gastric contents were found in the stomach, which, in Dr. Ichinose’s opinion, were taken from an external source into the stomach in the usual manner. There was no evidence of illness. Dr. Ichinose said Dr. Creed’s situation commonly results from ingesting drugs and alcohol and could also result from excessive consumption of alcohol. An illness such as flu would not ordinarily make one sick enough to lose the protective cough reflex which prevents aspiration. The *910 combination of regurgitation and aspiration implies a certain degree of nervous system depression which could have been caused by drugs, chemicals, alcohol, or barbiturates. According to Dr. Ichinose, the surroundings of the body would be significant in deducing what caused the vomiting and aspiration. The death was not classified as a natural death or a murder and therefore was put into an unclassified grouping. There were no signs of external body trauma. There was also no evidence of internal body trauma in the sense of tears or contusions. There would have been injury to the brain and other organs from lack of oxygen and chemical injury to the trachea and bronchial area, but the decomposition had concealed them. The injury to the trachea was presumptively evident from the presence of the gastric contents in the trachea. Dr. Creed had been dead from three to five days when found on September 28.
Dr. James G. Hair, stipulated to be an expert in pathology, testified in deposition that he examined the autopsy protocol and read Dr. Ichinose’s testimony. According to Dr. Hair, the protocol does not show the cause of Dr. Creed’s death, and the decomposition would have made it impossible to tell what the cause of death was. According to Dr. Hair, there was no evidence that the death was caused by external means.
The trial court concluded on the basis of the above evidence that the death was unquestionably accidental but that the cause was internal rather than external, citing Towner, supra. However, there was no autopsy performed on the deceased in Towner and the evidence did not indicate:
“ . . . whether asphyxiation was brought about by the aspiration of food, which at some time prior thereto had been taken into the body, or by the aspiration of mucous, which we think could not be considered as having been taken into the body from external sources.” 137 So.2d 453.
The mucous referred to was caused by the decedent’s preexisting tonsillitis, a condition not present in the instant case. Here, there was no evidence of illness or disease.
This court in Towner further pointed out:
“Although we feel that the death in this case was not brought about by external means, a different result might be reached in a case where death results from regurgitation and aspiration of vomitus brought about by sudden trauma or by the consumption of noxious substances.” 137 So.2d 453.
That is, of course, the situation here where Dr. Creed consumed a quantity of alcohol, a substance noxious in excessive amounts.
While the trial court may have been correct in holding that Dr. Creed’s death did not occur from external means evidenced by some mark or contusion visible on the exterior of the body[1], it erred in failing to hold that Dr. Creed’s death occurred as the result of “ . . . internal injury visibly manifest on an autopsy,” and thus was within the policy provision. According to Mrs. Whitecloud, there were no indications of drugs and there is no evidence that Dr. Creed had been ill. According to Dr. Ichinose, an illness such as flu would ordinarily not have been sufficient to depress the protective cough reflex. The evidence indicates that Dr. Creed drank an excessive quantity of beer and started vomiting. Because the alcohol depressed his normal cough reflex, the gas- *911 trie contents were forced into the air passages and caused his death. Dr. Creed was a young man in good health. Although the vomiting was not abnormal, the aspiration of the vomitus was. Dr. Ichinose testified that there was evidence of injury to the lingual bronchial system and to the trachea. The internal injury to the organs from the aspiration of the gastric contents of the stomach caused the death by creating laryngeal spasm and suffocation.
The direct evidence of Dr. Ichinose is of more probative value than Dr. Hair’s comments based solely on Dr. Ichinose’s findings. Dr. Hair himself, although he questioned Dr. Ichinose’s final conclusion that death resulted from the gastric contents in the larynx and tracheobronchial tree, said that Dr. Ichinose had a better basis for his judgment. . Although Dr. Hair said the evidence he examined secondhand was insufficient to sustain Dr. Ichinose’s conclusion as to cause of death, he admitted the probability of death occurring in that fashion.
Dr. Ichinose’s autopsy protocol notes in the second paragraph that: “No evidence of internal body trauma is observed.”, but his report goes on to describe the regurgitated gastric contents present in the esophagus, the lingual bronchial system and the trachea. He explained in deposition that he was not equating trauma with injury in the protocol but was using trauma to refer to such injuries as fractures and tearing of organs.
“Visible injuries or marks need not be bruises, contusions, lacerations, or broken limbs, but may be internal injuries the existence of which may be outwardly indicated or perceived through observation or examination of the insured.” 44 Am.Jur.2d § 1225.
Dr. Ichinose’s examination was hindered by the decomposition of the body, but he stated that there was injury to Dr. Creed’s organs because of anoxia or loss of oxygen, causing injury to the brain and other organs. Dr. Ichinose went on to describe chemical injury to the trachea. Dr. Ichi-nose concluded that:
“The presence of the material [gastric contents] there [the lingual bronchial system and the trachea] in my own mind documents the injury operative in that area.”
This testimony establishes internal injury visibly manifest on an autopsy.
In the case of Siracusa v. Prudential Ins. Co. of America, 211 La. 1066, 31 So.2d 213 (1947), there was a badly decomposed body, and the coroner issued a certificate similar to that herein, stating that the cause of death was undetermined and under investigation. There was no direct evidence as to the cause of the death but circumstantial evidence ruled out any possibility but that of foul play. As to the requirement of visible marks of injury, the Louisiana Supreme Court held that, where such marks and contusions have been obliterated by decomposition, this does not preclude recovery. The practical approach shown by the court in that case is applicable here and has been adopted in other jurisdictions. See 28 A.L.R.3d 413 § 5.
The evidence all indicates that Dr. Creed died when his consumption of alcohol resulted in vomiting and accidental aspiration of the vomitus because the alcohol depressed his cough reflex. There is no evidence of any other cause of death. The fact that decomposition obliterated signs of the resulting internal injuries is of no consequence in view of Dr. Ichinose’s testimony that these injuries were present. The purpose of provisions requiring visible evidence of injury is to protect insurers from sham claims and not to create an artificially high standard of proof. See 28 A.L.R.3d 413 § 3.
Plaintiff’s petition prays for 6% interest from October 24, 1973, pursuant to LSA-R.S. 22:656. Presumably October 24, 1973, is when the insurer received the proof of loss, although there is no evidence *912 of the date in the record. However, the insurer’s reason for refusing payment is sufficient to constitute just cause under the statute, and this part of plaintiff’s claim is denied. Murphy v. Continental Casualty Company, 269 So.2d 507 (La. App. 1 Cir. 1972).
For the foregoing reasons, we find that the trial court erred as a matter of law in denying recovery. The judgment of the trial court herein is reversed, and
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Guaranty Bank & Trust Company of Alexandria, Trustee, and against defendant, National Life Insurance Company, in the sum of Fifty Thousand and No/100 ($50,000.00) Dollars, together with legal interest from date of judicial demand until paid, and all costs.
Reversed and rendered.

. See the analysis of Towner, supra, by Professor J. Denson Smith at 23 La.Law Review 355, and Sehonberg, supra, which indicate a contrary result. Professor Smith suggests that such a death should come “ . within the purview of the policy provi-vision [covering death by external, violent and accidental means] judged by the standard of the average man.” 23 La.Law Review 355. Compare Murphy v. Continental Casualty Company, 269 So.2d 507 (La.App. 1 Cir. 1972), where a vomiting death was declared accidental under this standard.