LANDRY, Judge.
This is an action by an insured to recover five claims for medical and hospital expense submitted to defendant insurer, Accident Indemnity Insurance Company, pursuant to a health and accident policy issued by defendant and termed an “American Cross Family Expense Plan”. Plaintiff’s suit demanded reimbursement of expenses in the aggregate of $1,201.16, together with 12% penalties and attorney’s fees in the sum of $500.00 for defendant’s alleged untimely failure to pay. The trial court rendered judgment in favor of plaintiff for the sum of $1,201.16 with penalties of 12% *208 on $663.51 and $350.00 attorney’s fees. From said adverse determination defendant lias appealed.
Three of the claims will be considered together inasmuch as they are based upon simultaneous tonsillectomies performed upon plaintiff’s minor children on December 27, 1961. The fourth claim is for medical and hospital expense incurred November 28 to November 30, 1961, in the hospitalization and treatment of plaintiff for the disease known as intercostal neuritis. The final claim is for expenses incurred in the hospitalization and treatment of plaintiff December 26-December 28, 1961 and February 3-February 10, 1962, because of injuries sustained in an automobile accident which occurred December 26, 1961.
PLAINTIFF’S ILLNESS
The policy in question, issued under date of October 23, 1961, became effective November 23, 1961, by virtue of the following provision:
“Injury” as used in this policy means accidental bodily injury occurring while this policy is in force, as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in loss covered by this policy. "Sickness” as used in this policy means sickness or disease contracted and commencing after this policy has been in force for not less than thirty days after its effective date as to the person whose sickness is the basis of claim and resulting in loss covered by this policy.
“The Application, attached hereto and made a part hereof, and the provisions and benefits written or printed by the Company on the succeeding pages hereof form a part of this policy as fully as if recited over the signatures hereto affixed.” (Emphasis added.)
Five days after the effective date of the policy, namely, November 28, 1961, plaintiff was admitted to the Seventh Ward General Hospital for treatment of intercostal neuritis of viral origin. Dr. William L. Travis, II treated plaintiff for two days and discharged him November 30, 1961. Plaintiff submitted proof of loss therefor on December 21, 1961, payment of which was declined by defendant on the ground the illness commenced within 30 days of the issue date and therefore prior to the effective date of November 23, 1961, consequently appellant was not liable for such expense as provided in the hereinabove set forth definition of the term “sickness” as appears in the policy. Shortly prior to institution of this suit, which was filed March 17, 1962, defendant issued separate checks dated March 8, 1962, to the hospital and the attending physician for the amounts due under the policy for this particular claim. Because plaintiff had already paid these bills, the hospital and physician inquired of plaintiff what disposition he wished made of the checks. Plaintiff obtained the checks from the hospital and physician, made copies for his own records and returned the checks to defendants inasmuch as plaintiff had previously placed this claim as well as the claims for his children’s tonsillectomies, in the hands of his attorney for collection. In this regard plaintiff prayed for and obtained judgment for $187.95 consisting of hospital expense in the sum of $160.95 and physician’s bills in the amount of $27.00. Defendant tendered $159.95 for the hospital ($1.00 for telephone charges appearing on the itemized statement being not covered by the policy), and $25.00 for the physician in view of a policy limitation of said amount payable in the event of treatment by a physician when no surgery is necessary.
Defendant’s contention the illness in question commenced within 30 days of effective date of the policy and is therefore not covered, is predicated on the following notation appearing on plaintiff’s record of admission to the hospital: “Present illness” Began about 4 days before admission * * * ” (Emphasis added.)
*209 According to the clear and unambiguous policy provision hereinbefore set forth, only an illness commencing on or after November 23, 1961, was intended to be covered. If plaintiff’s illness commenced exactly four days before admission to the hospital, it would have begun November 24, 1961, which date was within the policy coverage. By deposition appearing of record plaintiff testified the aforesaid notation on his admission record was incorrect and his first symptoms did not become manifest until the day preceding his hospitalization, namely, November 27, 1961. Nothing in the record indicates a prior date of inception of the malady in question and appellant now virtually concedes appellee is entitled to recover the sum of $184.95 for this particular illness.
However, under the circumstances shown, we do not regard appellant’s failure to timely pay this claim unreasonable or arbitrary. The fact that the hospital admission records indicate the onset of this disease occurred “about 4 days before admission” which placed its inception at the very brink of coverage wortld, in our judgment, naturally alert a reasonable, prudent insurer and would justify further investigation of the issue of coverage. The term “about 4 days before” could obviously mean more or less than four days. If it did in fact mean more than four days coverage would have been seriously questionable. In addition it appears that within 30 days of receipt of this notice of loss, appellant received three additional questionable claims for the tonsillectomies to the Diez children (three simultaneous operations of such nature in a single family being, in-our opinion, somewhat out of the ordinary). Appellant was therefore faced with four claims on a policy effective less than two months. Such circumstances could reasonably be expected to arouse caution and doubt on the part of defendant insurer. Moreover, despite said multiple claims to which yet another was added by proof of loss submitted February 26, 1962, for appellant’s hospitalization as the result of the injuries sustained in an automobile accident December 26, 1961, defendant insurer sent checks in early March, 1962, in payment of all claims covered under the policy with respect to plaintiff’s illness. Considering defendant’s delay with respect to this claim was neither unreasonable nor arbitrary, no attorney’s fees are recoverable with respect to this claim.
THE TONSILLECTOMIES
On the afternoon of December 26, 1961, plaintiff’s three children, Linda Diane, Michael and Alice Marie were admitted, at five minute intervals, to the Seventh Ward General Hospital, Tangipahoa Parish, following, by approximately one hour, the admission of their father for treatment of injuries received in an automobile accident. According to plaintiff’s petition, the children were admitted to the hospital for chronic tonsillitis for which they were treated by Dr. W. L. Travis, II. The treatment administered consisted of tonsillectomies on each child. Defendant insurer admitted the children were hospitalized for chronic tonsillitis and pleaded the defense of no coverage on the ground the disease existed in all the children prior to the effective date of the policy.
While the admission record of each child contains the recitation “Provisional diagnosis: Chronic Tonsilitis (sic)”, we believe the evidence overwhelmingly preponderates in favor of the conclusion that neither child suffered from such illness on the date in question. The record further establishes that the children’s tonsils were removed solely at the request of plaintiff and his wife as “preventive medicine” in the hope it would reduce their susceptibility to colds and sore throat.
Dr. William L. Travis, II the surgeon who signed the admission records, testified in essence he had no record of ever having examined the children prior to their admission to the hospital. At the time of their examination upon admission all were free of symptoms of tonsillitis. His sole *210 basis for the diagnosis entered on the admission records was the history obtained from the parents. He further testified that normally a tonsillectomy is not performed while the patient is suffering from sore throat or infected or abscessed tonsils.
Dr. Marshall Scarle, plaintiff’s family physician, testified in substance that on numerous visits of the children for routine immunization, vaccination and treatment for childhood diseases, at no time, with but one exception, did he ever detect any of the children with tonsillitis, the one exception being January 2, 1958, on which date Alice Marie was suffering from tonsillitis and nasal congestion. His testimony leaves the clear, unmistakable impression that neither of the children were suffering from chronic tonsillitis.
Plaintiff concedes Dr. Travis did not examine the children prior to their admission to the hospital for the surgery performed. He likewise acknowledges no other medical authority recommended the tonsillectomies. The gist of plaintiff’s testimony is that he and his wife decided, about one week prior to the operations, that the children should have their tonsils removed to reduce medical bills for colds and sore throats. In view of the foregoing, it is abundantly clear the decision was reached solely by the father and mother without the benefit or assistance of professional advice or medically sound reason.
A careful reading of the policy discloses that not every tonsillectomy is covered considering the policy clearly states it applies only to surgery necessitated by illness or injury commencing after the policy becomes effective. In this regard the pertinent policy provision reads as follows:
“If Injury or Sickness shall require, commencing while this Policy is in force, regular treatment and attendance of a duly licensed doctor of medicine, surgery, or osteopathy, the Company will pay the expense actually incurred, commencing with the date of such expenses, for services and supplies listed herein received by the Family Member within six months after the date of the accident or first treatment for sickness, up to the Limit of Payment specified in the Schedule, as the result of any one accident or sickness.
i}i ‡ ‡ ^ ‡ ‡
“(f) treatment by a duly licensed doctor of medicine, surgery or osteopathy, not a member of the insured’s family, except that the amount payable shall not exceed $25.00 if no surgery is performed or $100.00 if surgery is necessary.
ífc í¡c H* ifc ‡ ‡
(Emphasis added.)”
It is apparent therefore the expenses of surgery are covered by the policy only when surgery is required by injury or sickness as defined in the policy. The sole exception is a clause (not pertinent here) which denies to the insurer the defense that the illness commenced prior to coverage, after the policy has been in effect for two years.
In the case at bar the tonsillectomies were performed solely because the parents desired the operations for the reason previously indicated. The record is barren of evidence the surgery in question was necessitated by injury or sickness. Nothing in the policy indicates an intention on the part of the insurer to be liable for surgery which was not necessitated by illness or injury but which, on the contrary, was performed purely as preventive medicine while the patient was in a state of good health.
 Under the circumstances existing in the case at bar we find no merit in plaintiff’s contention that defendant has changed its defense from the position of claiming the condition was chronic and existed before the effective coverage date, to the inconsistent position that the children did not have tonsillitis at all. In this connection, it is significant that plaintiff himself originally sought collection of these expenses predicated on the allegation his children were admitted to the hospital for chronic tonsillitis.
*211 Defendant’s only defense was in each instance the condition antedated the effective coverage date. At the trial, however, plaintiff’s own witnesses established conclusively that not only had the condition not pre-dated the effective coverage date, but also that the children were not admitted to the hospital as a result of chronic tonsillitis. On this issue it appears plaintiff’s position was untenable from the outset. The children could not have had acute tonsillitis, because the operations would not normally have been performed under such conditions. If they did in fact have chronic tonsillitis — by definition a condition of long standing — it would have commenced prior to coverage herein. Dr. Scarle’s testimony reveals that tonsillectomy does not become necessary as a result of tonsillitis unless there is a history of recurrent acute attacks which would render the disease chronic. The record is even barren of evidence indicating the children had an acute attack in the two to three week period between the effective coverage date and the date plaintiff and his wife decided the children should have their tonsils removed.
It follows that the sum of $312.65 and $225.00 awarded plaintiff by the trial court for hospital and surgical expense, respectively, incident to said tonsillectomies, is not recoverable by appellee.
PLAINTIFF’S INJURY
On December 26, 1961, plaintiff was admitted to the same hospital as his children, plaintiff’s admission being approximately one hour previous to that of his said offspring. He remained in the hospital until his discharge on the morning of December 28, 1961. Appellee was re-admitted to the hospital February 3, 1962 and' again discharged February 10, 1962, both periods of confinement being necessitated by injuries sustained in an automobile accident which occurred December 26, 1961. According to the proof of loss signed by Dr. Travis, plaintiff’s injuries consisted of whiplash injury of the neck, mild concussion, laceration of the scalp, trauma to the lower back, headache, neck pain and numbness in the-arms and legs. In addition the hospital' record indicates bruise to the right groin. On plaintiff’s first admission his scalp laceration was sutured. Plaintiff’s readmission to the hospital in February, 1962, was-on the recommendation of Dr. Edward T. Haslam, an orthopedist, who placed plaintiff in head traction because of plaintiff’s continued complaints of neck and back pain.
In plaintiff’s application for the insurance in question, which application, by the terms of the policy, is a part thereof, plaintiff disclosed a history of nervous stomach in May, 1961, a disc operation in 1946, a second disc operation in September, 1950, and a spinal fusion in December, 1950.
Pertinent to this claim is the following waiver provision set forth in the policy:
“Because of the previous medical history of George: Gastritis this policy does not cover, and the premium includes no charge for, any and all loss or disability resulting from George: disease of the gastrointestinal tract; Back or spine trouble.
“At the written request of the Insured, 12 months from the effective date of this policy, the company agrees to consider the removal of this waiver, provided the Insured, at his expense,, will furnish the Company with a satisfactory physical examination report.” (underlining represents blanks in Waiver form.)
Predicated on the foregoing waiver defendant denies liability for this claim. Defendant maintains the waiver expressly excludes coverage of any back or spine ailment suffered by appellee because of plaintiff’s medical history of prior back and spinal disorders as revealed in plaintiff’s application for the present policy.
Plaintiff contends there is coverage for the reason the wording of the above waiver does not specifically include injuries to the back or spine. We might add further, the waiver does not expressly include dis *212 ease or sickness of the back or spine. The words employed, so far as this case is concerned, are “back or spine trouble.” Obviously therefore the matter must turn upon the meaning of the phrase “back or spine trouble” appearing in the waiver.
It is settled law that in the absence of conflict with statutory rules or public policy, insurers may limit their liability and impose whatever conditions they please upon their obligations, and that unambiguous provisions limiting their liability must be given force and effect. Hardee v. Southern Farm Bureau Casualty Co., La.App., 127 So.2d 220; Kennedy v. Audubon Insurance Co., La.App., 82 So.2d 91.
Although an insurance contract must be construed strictly against the insurer and liberally in favor of the insured, the courts must construe and interpret the policy in accordance with the intent of the contracting parties at the time of issuance of the policy. Drexler Motor Co. v. Bruce, La.App., 95 So.2d 207.
It is the duty of the insurer to clearly express limitations of its obligations and any ambiguity in such limitations must be resolved against the insurer. Kendrick v. Mason, 234 La. 271, 99 So.2d 108.
If there is any doubt whether a loss is covered by an insurance policy, such doubt should be construed in favor of the insured. Moore v. Stuyvesant Insurance Co. of N.Y., La.App., 98 So.2d 911.
Appellant maintains the waiver provision intended to exclude any claim by plaintiff for any trouble, injury or disease of the back or spine whatsoever, irrespective of the manner in which it occurred and necessarily so because of plaintiff’s previous history of spinal fusions. We do not share this view because the terminology employed by defendant is vague and ambiguous in that it does not define the term “back or spine trouble” with any reasonable degree of particularity; it does not expressly exclude disease of the back or spine; it does not expressly exclude injury to said bodily members; and neither does it expressly exclude all injury or disease of the spine. Under such circumstances we take it to mean defendant intended to exclude from coverage only such difficulty as plaintiff might experience with his back or spine as a result of or related to his previous condition. Conceding defendant may have excluded liability for medical expense incident to treatment of plaintiff for any disease or injury to plaintiff’s back or spine, including, inter alia, the cervical region, irrespective of such condition being related or unrelated to plaintiff’s medical history, it nevertheless remains the wording of the waiver in question does not clearly express such intent.
The record herein leaves not the slightest doubt that the cause of plaintiff’s hospitalization was unrelated to his former condition. His principal injury in the accident of December 26, 1961, was to his neck or cervical region whereas his previous history was confined to the low back. The undisputed testimony of Dr. Travis is to the effect that during the two occasions of plaintiff’s hospitalization plaintiff was treated primarily for the neck injury and the back pain was secondary. Plaintiff was readmitted to the hospital February 3, 1962, for pains in the neck, arms and shoulders. After treatment in traction for a week without favorable results, plaintiff was referred to Dr. Duane Forman, a neurosurgeon. Dr. Forman did not testify herein.
As defendant correctly points out plaintiff’s recovery in this regard is limited to $300.00 in view of the policy provision clearly restricting defendant’s liability to $300.00 as the result of any one accident or illness.
Considering the multiplicity of claims filed by the insured within the short period following the effective date of the policy, the questionability of the claims for the tonsillectomies and plaintiff’s intercostal neuritis and the prior medical history of plaintiff insofar as it is pertinent to inter *213 pretation of the waiver clause, we feel that appellant’s failure to timely remit cannot he said to have been unreasonable and arbitrary. Therefore, the judgment of the trial court awarding penalties and attorney’s fees must be set aside.
Accordingly, it is hereby ordered, adjudged and decreed the judgment of the trial court awarding plaintiff, George E. Diez, judgment against defendant, Accident Indemnity Insurance Company, in the sum of $1,201.16, together with penalties of 12% on $663.51 and attorney’s fees in the sum of $350.00, be and the same is hereby amended and revised and judgment rendered herein in favor of plaintiff, George E. Diez and against defendant, Accident Indemnity Insurance Company, in the sum of $484.95, together with interest thereon at the rate of Five (5%) per cent per annum from date of judicial demand, until paid, all costs of these proceedings to be paid by appellant, Accident Indemnity Insurance Company.
Amended and rendered.