Robert AVERY et al., Plaintiffs–Appel-
lees Cross–Appellants,

v.

MAREMONT CORPORATION,
Defendant–Appellant
Cross–Appellee.

No. 78–2557.

United States Court of Appeals,
Fifth Circuit.

Oct. 20, 1980.

Rehearing Denied Nov. 28, 1980.

Ralph E. Hartman, Jack Pew, Jr., Dallas, Tex., for defendant–appellant cross–appellee.

Kelsoe, McDonald & Ayres, R. Jack Ayres, Jr., Michael F. Pezzulli, Samuel B. Paternostro, Dallas, Tex., for plaintiffs–appellees cross–appellants.

Before COLEMAN, Chief Judge, PECK,* and KRAVITCH, Circuit Judges.

* Circuit Judge of the Sixth Circuit, sitting by designation.

COLEMAN, Chief Judge.

In 1974 eighteen year old Larry Avery bought a 1967 Mustang from his brother, thereafter setting out to modify the car for racing purposes. To elevate the rear end, he installed extenders between the normal shackles and the leaf springs and added expensive oversized tires. Unfortunately, the tires rubbed the fenders and were thereby cut up. Larry sought a solution for the tirerubbing problem, consulting two friends, Charles Nordmeyer and John Beckman. They advised that, based upon ads they had read, Gabriel "Hi Jackers" seemed to be the answer. On August 16, 1974, Larry went to Plano Tire and Rubber, where he bought two Gabriel Hi Jackers and had the seller to install them, whence came this rather intricate diversity litigation.

The shock absorbers were installed by a Plano teenaged employee, Bryan Roberts, who, most unfortunately, did the job incorrectly. The car rode very rough, so Larry and Nordmeyer flipped up the back seat and noticed that the shock absorbers "seemed loose". Larry was thinking of selling the car, so he let it set for two weeks.

On August 29, thirteen days after the installation, Larry and Nordmeyer took the car out at night. Larry pulled off a paved road onto a gravel road, whereupon the car began bouncing and swaying from side to side. Larry lost control of it and careened off the road, into a tree. The impact produced a severance of Avery's brain stem, reducing him to a quadruplegic with little chance of substantial recovery.

This tragic turn of events prompted Larry's parents to sue the shock absorber manufacturer, Maremont Corporation, on strict liability in tort and for violation of the Texas Deceptive Trade Practices Act.

Moreover, since they had no diversity, in state court Plano Tire and Rubber was sued for negligent installation to the Hi Jackers. Maremont impleaded Plano in federal court. Prior to the outcome of the federal court trial, the parents settled with Plano for

$80,000, with an accompanying stipulation that Plano had been negligent.

The instant (federal) case was first tried to a jury in February, 1977, but ended in mistrial. On the second trial, the results of which generated this appeal, the jury found against Maremont on both theories of liability.

On strict liability in tort the jury returned the following answers:

### VERDICT OF THE JURY

We, the jury, find in favor of the plaintiffs, Robert Avery and Barbara Avery, individually and as next friends for Larry Avery, and against the defendant, Maremont Corporation, on the basis of the doctrine of strict liability in tort. (Signed by the Jury Foreman).

### FIRST QUESTION

Did you find that the defendant failed to provide a sufficient warning that Gabriel "Hijackers" shock absorbers were dangerous and not suitable for use on vehicles with oversize tires and special customizing equipment?
Answer: We did.

### SECOND QUESTION

Did you find that the defendant failed to provide sufficient instructions as to the proper manner of installation and use of the Gabriel "Hijackers" shock absorbers?
Answer: We did.

### THIRD QUESTION

Did you find that defendant established by a preponderance of the evidence that plaintiff Larry Avery misused the Gabriel "Hijackers" shock absorbers, and that such misuse partially produced and caused his accident and injuries?
Answer: We did.

### FOURTH QUESTION

What percentage of plaintiff Larry Avery's accident and injuries was proximately caused by such misuse?

Answer: 74%.

The jury also found for plaintiffs on the Deceptive Trade Practices allegation [the jury answers on this aspect of the case will be listed later].

The verdict, as signed and returned into open Court, however, was for a single sum, $690,905.02.

Plaintiffs moved for judgment on the strict liability claim in the amount awarded by the jury or, in the alternative, judgment for approximately $7.5 million on the Deceptive Trade Practices claim. This was on the *assumption* that the $690 thousand award represented only 26% of total damages sustained, giving rise to the inference, which the jury had not articulated, that the damages amounted to $2.5 million, which was to be trebled under the Texas Deceptive Trade Practices Act. Maremont moved for judgment n. o. v. on both claims. Judge Justice granted Maremont judgment n. o. v. on the Deceptive Trade Practices claim but entered judgment against Maremont for the amount specified in the verdict, $690,-905.02.

Plaintiffs appeal the n. o. v. judgment. Maremont challenges the $690,905.02 judgment entered against it.

Maremont offers several alternative appellate arguments:

1. It should have been granted judgment n. o. v. on the strict liability claim because the record fails to show either the allegedly dangerous nature of the product or that the failure to warn caused Avery's injuries; *OR*

2. In assessing damages, the Court erred in failing to instruct the jury to consider Plano Tire and Rubber's misuse and, therefore, it is entitled to a new trial; *OR*

3. The Court erred in failing to adjust the award for the present value of the money; *OR*

4. The Court erred in failing to reduce the award by 50% because plaintiffs had settled with Plano; *OR*

5. The Court erred in failing to reduce the award by the actual amount Plano had paid in its settlement.

This case has been tried twice. The unusually able briefs and oral arguments satisfy us that both sides had the assistance of competent counsel and that all factual and legal aspects of the case have been explored to their outer limits.

Liability was to be determined by Texas law and the sufficiency of the evidence is governed by federal standards. *Two Rivers Company v. Curtiss Breeding Service,* 624 F.2d 1242 (5th Cir. 1980).

A careful exhaustive examination of the trial transcript leaves us with the view that on the factual issues the jury might have decided the issue of liability for either party as indeed there was one hung jury in this case, but we are fully satisfied that the evidence on the issue of strict liability in tort was sufficient to take the case to the jury, *Boeing v. Shipman,* 411 F.2d 365 (5th Cir. 1969). Therefore we need not, and do not, protract this opinion by a lengthy recitation of the evidence adduced on behalf of the respective litigants.

## THE DECEPTIVE TRADE PRACTICES CLAIM

The jury found that Maremont had violated the Texas Deceptive Trade Practices Act, Section 17.46 V.T.C.A. Maremont sought, and the trial judge granted, judgment n. o. v. on this point. We affirm that action.

The Texas Deceptive Trade Practices Act forbids "False, misleading, or deceptive acts . . .," Article 17.46(a), V.T.C.A., and lists 23 examples of such acts. Sec. 17.46(b).

▪ Avery accused Maremont of violating six specific parts of Sec. 17.46(b), the most important of which was 17.46(b)(7), "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

Viewing the complaint and verdict in the most favorable light, it was asserted that Maremont represented in its ads that its shock absorbers were safe for use on a customized car when they were not and further asserted that the shock absorbers were easy to install when they were not. These assertions do not fit easily into the 17.46(b)(7) mode, which seems more suited to a commercial fraud such as a representation that a car is new when it is actually used.

In any event, this question of Deceptive Trade Practices was submitted to the jury on a general verdict with six specific questions. Below are the jury's answers:

## VERDICT OF THE JURY

We, the jury, find that defendant, Maremont Corporation, committed a deceptive trade practice (or practices) which adversely affected plaintiff Larry Avery. (Signed by the foreman of the Jury.)

## QUESTION "A"

Did you find that defendant made false, inaccurate and untrue statements of the shock absorbers' performance characteristics?
Answer: We did.

## QUESTION "B"

Did you find that defendant made false, inaccurate and untrue statements of the shock absorbers' safe and proper usage?
Answer: We did not.

## QUESTION "C"

Did you find that defendant concealed material information in its advertising and sales promotions concerning the fact that the shock absorbers were unsafe for use on cars with oversize tires or with special customizing equipment?
Answer: We did.

## QUESTION "D"

Did you find that defendant failed to disclose in its advertisements in clear and

understandable language that the product was dangerous for use on cars with oversize tires or special customizing equipment?

Answer: We did.

### QUESTION "E"

Did you find that defendant failed to disclose in its advertising and promotional materials that special installation instructions were required before the product could be safely installed or used?

Answer: We did.

### QUESTION "F"

Did you find that defendant represented that its warranty card, which was not given to the customer until after the sale of the product, constituted a warning or the furnishing of safety information concerning the dangerous characteristics, if any, of the product?

Answer: We did not.

We begin our analysis by noting that in answer B the jury found that the manufacturer had not made false, inaccurate, and untrue statements concerning the safe and proper use of the shock absorbers.

In answer A, the jury found that the defendant had made false, inaccurate and untrue statements about the performance characteristics of the shock absorbers. Even so, there was no evidence in this case that the shock absorbers were correctly installed. To the contrary, the plaintiff's case demonstrated that the shock absorbers had been incorrectly installed and plaintiffs had been paid $80,000 in damages for that misinstallation. Undisputed evidence reflects that Larry had discovered the misinstallation; had set the car up for two weeks, expecting to sell it; and could not have expected the absorbers to perform correctly when he went for the tragic drive. Indeed, as appears *ante*, the jury found that Larry should be charged with 74% of the fault for the accident.

The findings in answers C and D were concerned with alleged deceptions in advertising. The problem with this is that the plaintiffs simply failed to prove that Larry Avery knew the contents of these advertisements or had relied on them to his detriment. The nearest they got to it was testimony by Nordmeyer that he had given Larry magazines containing such advertisements and had seen him reading magazines which contained the like, but nobody had ever mentioned or discussed them, evidencing a familiarity with their representations or a reliance on those representations, forming, in turn, a causal connection between the two.

The answer to question E is irrelevant. That also dealt with advertisements and promotional materials. Larry did not try to install the shock absorbers; he relied on Plano Tire and Rubber (who presumably knew how) to do it. Because of that reliance he collected $80,000 directly for Plano's negligent failure to install them properly.

The District Judge, sitting in diversity and performing the same judicial functions which would have been performed by a state court in the premises, evaluated the jury answers and concluded that under the evidence they had not added up to an actionable violation of the Texas Deceptive Trade Practices Act.

We see nothing in the briefs, or as a result of our independent research, which would warrant our disagreeing to the point of reversal. As one of many examples, we might point out that, so far, no Texas court of last resort has held the Texas statute in question to be applicable in a personal injury–strict liability in tort case. The Texas Legislature has not said so.

The Supreme Court has stated that for purposes of diversity jurisdiction a federal court is, in effect, another court of the state. *Angel v. Bullington,* 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947).

The Supreme Court gives special weight to the interpretations of a federal district court judge on questions of the law of his state. *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 204, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956).

In one case, when it was necessary to determine a point of state law not determined in the record, the Supreme Court remanded to the federal district court, saying the district court judge, who deals regularly with questions of state law, is the best person within the federal judicial system to make determinations of how a local court would determine an issue. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979).

■ A federal district court judge's determination on the law in his state is, as a rule, entitled to great weight on review. *Petersen v. Klos*, 433 F.2d 911, 912 (5th Cir. 1970); *Southern Ry. Co. v. State Farm Mut. Auto. Ins. Co.*, 477 F.2d 49, 52 (5th Cir. 1973); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 466 (5th Cir. 1967). The district court's opinion is subject to review on appeal and will be overturned if clearly wrong. However, where the state law is uncertain, we are hesitant to second guess the federal district court judge. *Stool v. J. C. Penney, Co.*, 404 F.2d 562, 563 (5th Cir. 1968).

For all of the foregoing reasons, we affirm the action of the District Court in granting the judgment notwithstanding the verdict on the question of deceptive advertising.

## MAREMONT'S REDUCTION POINTS

Maremont asserts the court erred in failing to have the jury find the percentage of fault attributable to Plano's negligence, and in instructing the jury that third party misuse was no defense in a strict liability case.

■ The Court's instruction on misuse was correct. In *General Motors v. Hopkins*, 548 S.W.2d 344, 351 (Tex.1977), the Texas Supreme Court stated "We reject misuse as a defense where the product is dangerous for its foreseeable use and that danger is a producing cause of the injury of a bystander or a user who has not himself made unforeseeable use of the product."

### Comparative Fault Between Maremont and Plano

■ Maremont argues that the Court should have established a system of "comparative fault" between itself (liable under strict liability) and Plano (liable under negligence theory). It cites *General Motors v. Hopkins* in support of this.

*Hopkins,* however, does not cover apportionment of liability between one tortfeasor who is liable under negligence and the other who is liable under strict liability. In *General Motors Corp. v. Simmons*, 558 S.W.2d 855, 862–3 (Tex.1977) the Texas Supreme Court specifically declined to mandate the comparative fault system here urged by Maremont. It analyzed the Texas statutes on contribution, Articles 2212 and 2212a, V.A.T.S., found they did not cover such a situation and urged the legislature to act to fill the void. Since Texas does not have a mechanism for comparing fault of a strictly liable manufacturer with the fault of a negligent co–defendant, the District Court did not err in refusing to invoke such an approach.

### Discounting the Award

■ Maremont argues that the Court erred in failing to reduce the award to Avery so as to discount future damages.

Prior to submitting the case to the jury, Maremont sought to have the Court give the jury a page–long explanation of the meaning of discounting an award of future damages. The Court rejected this proposed instruction, as have numerous Texas courts. *Atchison, Topeka and Santa Fe Ry. Co. v. Sheppard*, 447 S.W.2d 216 (Tex.Civ.App.– Eastland, 1969, no writ history); *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830, 836 (Tex.Civ.App.– Waco, 1960, writ ref'd n. r. e.).

Texas courts handle instructions on discounting through a simple instruction to the jury, which they refuse to amplify: "What sum of money, if any, *if paid now in cash*, do you find from the preponderance of the evidence . . ." [emphasis added]. Texas courts take the position that any further explanation would confuse the jury,

and that the determination of discounting should be left strictly to the jury. *Continental Casualty Co. v. Vaughan*, 407 S.W.2d 818, 825 (Tex.Civ.App.–Houston, 1966, writ ref'd n. r. e.); *Houston Belt and Terminal Ry. Co. v. Davis*, 19 S.W.2d 77 (Tex.Civ. App.–Galveston, 1929, writ ref'd).

Maremont failed to object to the Court's refusal to accept its offered instruction on discounting. Avery argues that Maremont failed to press this point at the trial court for tactical reasons. Had it argued the point Avery would have rebutted with evidence of future inflation, which Texas courts allow to be considered in the computation of future damages. *Weakley v. Fischback and Moore, Inc.*, 515 F.2d 1260, 1267 (5th Cir. 1975). Since inflation has exceeded the interest rate over the last 20 years, consideration of both could have resulted in increasing the award.

Since Maremont failed to object to the refusal of the Court to accept its instruction and did not object to the Court's failure to give any instruction on discounting, there was no error in the failure in this regard.

*Maremont's Argument That It Was Entitled to Have the Jury Verdict Reduced by 50% or, at least, by the Amount Paid by Plano*

Finally, Maremont argues that the Court should have reduced the jury award either by 50% because of Avery's settlement with Plano Tire and Rubber or by the $80,000 Plano paid Avery.

Maremont's claim for a 50% reduction in the award is based upon *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex. 1964) and upon Article 2212, V.A.T.S. This Texas doctrine, designed to prevent collusive settlements, provides that when a plaintiff settles with one tortfeasor, all other tortfeasors who were in pari delicto with the settling tortfeasor are entitled to a reduction in the total award equal to the proportion of tortfeasors who settled. This doctrine was superseded by Article 2212a, V.A.T.S., which set up a system of comparative fault for use in determining contribution among *negligent* joint tortfeasors.

Maremont claims the case of *General Motors v. Simmons*, 558 S.W.2d 855, 862 (Tex. 1977), holds that Article 2212 and the *Palestine* doctrine still have vitality where one joint tortfeasor is held to be strictly liable and the other is held to be negligent.

■ When Plano settled with Avery it was stipulated into the record that Plano's installation of the shock absorbers was negligent and that such negligence was a proximate cause of the accident. This determination, along with the jury's findings in this case, makes Plano and Maremont joint tortfeasors, jointly and severally liable for the injury to Avery. *Burns v. Lamb*, 312 S.W.2d 730 (Tex.Civ.App.–Ft. Worth, 1958, ref'd n. r. e.); *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952).

Although Articles 2212 and 2212a V.A. T.S. do not provide for submission of the question of comparative causation between one tortfeasor who is strictly liable and another who is negligent, they do allow contribution between the two. *General Motors v. Simmons*, 558 S.W.2d 855, 863 (Tex. 1977); *Bristol–Myers Co. v. Gonzales*, 548 S.W.2d 416 (Tex.1976), reversed because of unrelated error, 561 S.W.2d 801 (Tex.1978).

■ Since Plano settled prior to Avery's judgment against Maremont, Maremont could be entitled to a 50% reduction in that judgment under Article 2212 V.A.T.S. and the *Palestine* doctrine unless Maremont violated a duty it owed Plano. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563, 565 (1949). The jury here determined that Maremont failed to give adequate warnings and instructions for the installation of the Hi Jackers. This was a failure of a duty Maremont owed not only to Avery, the purchaser, but also to Plano, the installer. *Bristol–Myers v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978); *Crocker v. Winthrop Lab., Div. of Sterling Drug, Inc.*, 514 S.W.2d 429, 433 (Tex.1974); *Air Shields, Inc. v. Spears*, 590 S.W.2d 574, 582 (Tex.Civ.App., Waco, 1979, writ ref'd n. r. e.). Because of this Maremont is not entitled to contribution

from Plano, or a 50% reduction in the award given Avery.[1]

■ Although Texas law does not require contribution from Plano to Maremont (and therefore a 50% reduction in Avery's judgment against Maremont), it does require that Avery's judgment be reduced by the $80,000 received from Plano. *Richards Mfg. Co. v. Aspromonte*, 557 S.W.2d 543, 549 (Tex.Civ.App.–Houston, 1977, no writ history); *Petco Corp. v. Plummer*, 392 S.W.2d 163, 167 (Tex.Civ.App.–Dallas, 1965, writ ref'd n. r. e.).

· With this $80,000 modification, we AFFIRM the judgment of the District Court as to strict liability in tort and in all other respects.

We REMAND to the District Court for the entry of a judgment for plaintiffs in the sum of $610,905.02.

---

1. We requested, and the parties filed, supplemental briefs on the impact, if any, of *Foster v. Ford Motor Company*, 616 F.2d 1304 (5th Cir. 1980). The result is that we are convinced that *Foster* is distinguishable and not dispositive of the case we have here for decision.