Dorothy L. O'TOOLE, wife of/and Donald C. Benge, Plaintiffs-Appellees,

v.

NEW YORK LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 80–3797.

United States Court of Appeals, Fifth Circuit.

April 1, 1982.

Eugene R. Preaus, New Orleans, La., for defendant-appellant.

James E. Blazek, Rebecca A. Bush, New Orleans, La., for plaintiffs-appellees.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

New York Life Insurance Company issued a policy insuring the life of David Benge, with the plaintiffs listed as beneficiaries. The policy provided coverage of $75,000, plus accidental death benefits in an equal sum if "the insured's death resulted directly, and independently of all other causes, from accidental bodily injury."

David Benge died from a self-administered injection of cocaine. Thereafter, New York Life paid the face amount of the policy but declined to pay the accidental death benefit.

The plaintiffs invoked diversity jurisdiction, sued for the additional amount, and, after a bench trial, received judgment. On appeal, New York Life contends that the question whether death caused by a self-administered injection of cocaine is "accidental," in insurance parlance, is *res nova* in Louisiana. It maintains that David Benge's death was not accidental because he intentionally injected himself with cocaine and death was a foreseeable consequence.

In rejecting New York Life's theory of the case, the district court reasoned "that although he [Benge] intentionally injected himself with cocaine, he did not intend to cause nor did he anticipate that this injection would cause his death." Based on this factual finding, and relying on *Schonberg v. New York Life Ins. Co.*, 235 La. 461, 104 So.2d 171 (1958), and *Brown v. Continental Casualty Co.*, 161 La. 229, 108 So. 464 (1926), the trial judge concluded that Benge's death was accidental, within the intendment of the insurance contract.

Findings of fact rendered by the trial judge are protected by the clearly erroneous shield of Fed.R.Civ.P. 52(a). Absent "the definite and firm conviction that a mistake has been committed," we will not disturb such findings. *United States v. United States Gypsum Co.*, 333 U.S. 364, 385, 68 S.Ct. 525, 537, 92 L.Ed. 746 (1948). Our review of the evidence does not compel such a conviction. Further, in a diversity case, great deference is accorded the conclusions of state law reached by the district judge, schooled and skilled in the law of her state. *Avery v. Maremont*, 628 F.2d 441 (5th Cir. 1980).

Since 1958, when the Supreme Court of Louisiana rendered its landmark *Schonberg* decision, the technical distinction between "accidental means" and "accidental results," for insurance purposes, has not been recognized in Louisiana. *See* Smith, *The Work of the Louisiana Supreme Court for the 1957–1958 Term—Insurance*, 19 La.L. Rev. 348 (1959); Note, *Accident Insurance—Distinction Between Accidental Results and Accidental Means*, 19 La.L.Rev. 185 (1958). In *Schonberg*, the insured died during surgery from an anaphylactic shock which was produced by a rare reaction to a blood transfusion. The reaction was unexpected, unusual, and unforeseen. While the blood transfusion was an intended act, it was not designed to transmit into the decedent's blood the reagent which caused the fatal reaction. In granting recovery under the double indemnity clause of the insurance agreement, the Louisiana Supreme Court rejected the postulate that if the means of triggering an injury is intended then the result cannot be accidental.[1]

1. The error inherent in this semantical confusion was highlighted earlier by Justice Cardozo's inimitable prose: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian bog." *Landress v. Phoenix Mut.*

The *Schonberg* court announced the following definition of "accidental," applicable in the insurance context: "whether the average man, under the existing facts and circumstances, would regard the loss so unforeseen, unexpected, and extraordinary that he would say it was an accident." 104 So.2d at 177 (*quoting Preferred Accident Ins. Co. v. Clark*, 144 F.2d 165, 167 (10th Cir. 1944)). Obviously, the test lacks precision, but in the past two decades, in combination with the rule that any doubt as to the meaning of an insurance policy provision must be construed liberally in favor of the insured, it has clothed the term "accidental injury" with expansive meaning. *See, e.g. Guaranty Bank & Trust Co., Alexandria v. National Life Ins. Co.*, 324 So.2d 908 (La. App.1975).

In the instant case, the policy excluded death by suicide, but an exclusion for death resulting from the self-administration of drugs was not stated. In addition, the insurance contract did not deny benefits if the insured died during the commission of an unlawful act. Under these circumstances, the question whether the policy extended coverage in this type of case is, at best, unclear. Consequently, the trial court was correct in awarding the accidental death sum to the plaintiffs, for it is "hornbook law that whenever ambiguity is found in the provisions of an insurance contract, such ambiguity will be resolved in favor of the insured so as to provide him with the broadest coverage consistent with a reasonable interpretation of the contract." *Easley v. Firemen's Ins. Co. of Newark, N. J.*, 372 So.2d 1067, 1071 (La.App.1979). *See Kendrick v. Mason*, 234 La. 271, 99 So.2d 108 (1958); *Craft v. Trahan*, 351 So.2d 277 (La.App.1977); *Levy v. Duclaux*, 324 So.2d 1 (La.App.1975); *Diez v. Accident Indem. Ins. Co.*, 162 So.2d 206 (La.App.1964).

The district court opined that had New York Life "wished to exclude such a death, it should have expressly said so in its policy." We agree. The judgment of the district court is AFFIRMED.

*Life Ins. Co.*, 291 U.S. 491, 499, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934) (Cardozo, J., dissenting).