**J. C. TRAHAN, Plaintiff-Appellee Cross-Appellant,**

v.

**The FIRST NATIONAL BANK OF RUSTON, Defendant-Appellant Cross-Appellee.**

No. 82–3148

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 1, 1982.

Hudson, Potts & Bernstein, B. Roy Liuzza, Monroe, La., for defendant-appellant cross-appellee.

Pugh & Pugh, Robert G. Pugh, Shreveport, La., for plaintiff-appellee cross-appellant.

Before BROWN, REAVLEY and JOLLY, Circuit Judges:

JOHN R. BROWN, Circuit Judge:

The facts in this case are not disputed. The district court found the First National Bank of Ruston liable to J. C. Trahan for the conversion of 15,000 shares of stock in Texas International Petroleum Corporation (TIPCO). The judge ordered the Bank to procure and deliver 15,000 shares of TIPCO stock to Trahan within 30 days of the date of judgment. Both parties appeal. The sole issue before this Court is whether, under Louisiana law, the trial judge used the correct measure of damages. The Bank contends that damages should be fixed at the value of the stock at the time of conversion. Trahan claims that the court should have awarded him the highest value reached by the stock between the date of conversion and the date of judgment.[1] Because we find no error, we affirm the district court's judgment.

---

1. On March 13, 1978, the date of conversion, TIPCO stock was worth $10 per share. On January 19, 1982, the date on which judgment

In the fall of 1973, Trahan pledged 70,000 shares of TIPCO stock to the Bank to secure two loans. In 1977, Trahan repaid the loans and demanded the return of the stock. The Bank refused, saying that the stock had been pledged additionally to secure loans made to a corporation, Resource Exploration, Inc., which the Bank considered to be "one and the same" as Trahan. This latter obligation was evidenced by an uninitialed interlineation on the pledge agreement. When Resource Exploration defaulted on its loan, the Bank sold 15,000 shares of the stock. Trahan filed this diversity suit.

The trial judge found that the stock had not validly been pledged as security for the loan to Resource Exploration and had been wrongfully converted by the Bank. He then ordered the Bank to tender an equal number of shares of TIPCO stock to Trahan, an award with which neither party is satisfied.

The Bank points out, correctly, that the usual measure of damages for conversion in Louisiana is either the return of the property converted or the value of the property at the time of conversion. *Haymon v. Holliday,* 405 So.2d 1304 (La.App.1981); *Boisdore v. International City Bank and Trust Co.,* 361 So.2d 925 (La.App.), *writ denied,* 363 So.2d 1384 (La.1978).

The trial court, however, found that unusual circumstances were present to justify its unusual award. Specifically, the judge concluded that as of the date of judgment "there [had] been no final and complete alienation" of the stock in question since the Bank could possibly retrieve the stock by way of a pending state court suit between it and the purchaser. If it were to do so, the order to procure 15,000 shares of TIPCO stock would amount to nothing more than the return of the property converted, in accordance with the traditional measure of damages. Moreover, the court found that if the Bank was allowed to recover and keep the actual stock while paying only for its value at the time of conversion, "the Bank would profit tremendously by its own wrongdoing to the tune of over three hundred thousand dollars at the stock's current value. That is the difference in what Schneider[2] paid the Bank and what is the current value of the stock."[3]

The court's order did not require the Bank to return the actual shares of stock which it had converted. Thus it is not strictly in accordance with the traditional measure of damages. The court ruled, however, that in unique circumstances Louisiana law does not inflexibly demand adherence to that measure. We agree that this distinguished Louisiana-trained judge read the Louisiana law correctly.

In order to reach this conclusion, we must blow a little dust from some cases decided around the turn of the century. In *Leurey v. Bank of Baton Rouge,* 131 La. 30, 58 So. 1022 (1912), the Louisiana Supreme Court adopted the traditional measure of damages called for here by the Bank. Upon elaboration, however, the Court recognized that particular circumstances might at times demand a different standard.

> There are, no doubt, some transactions in stocks, in which to hold a defendant liable only for the value of the stocks at the date of their actual conversion would afford a very inadequate remedy; as, for instance, where one, acting through a broker, buys stocks with the intention of holding them for a rise in the market and the broker sells them without authority and delays giving notice to his principal, so that the latter loses the opportunity of

---

was entered against the Bank, the stock was worth $29.50 per share. The highest value reached by the stock between those two dates was $64.25 per share, on January 28, 1981.

Texas International Petroleum Corporation is now known as Texas International Company.

**2.** The brokerage firm of Schneider, Bernet and Hickman, Inc. was the purchaser of the stock in question and plaintiff in the pending state action. The "current value" referred to by the court is, of course, the stock's value at the time of judgment.

**3.** The record contains evidence sufficient to support the court's factual findings.

availing himself of the rise that he expected, there is a loss of profit which was within the contemplation of the contract, and which should be borne by him through whose fault it is made.... And so, where, as in the case between the plaintiff and Mayer,[4] the element of bad faith is found....

58 So. at 1026.

The Bank argues that the Court meant this exception to apply solely to damages for breach of contract. The Court's language, however, plainly refutes this argument. *Leurey* instead says that in unusual situations, where justice so demands, a judge may fashion different, more appropriate remedies for the conversion of corporate stock. It then suggests two examples of such a situation.

*Succession of Gragard,* 106 La. 298, 30 So. 885 (1901), predates even *Leurey.* In *Gragard,* suit was successfully brought for recovery of the value of a number of bales of cotton. The Louisiana Supreme Court did not limit the plaintiff's damages to the value of the cotton at the time of conversion. "Considering that the cotton was being held for better prices, we think that the owners of it should be given the benefit of the better prices that prevailed within a few months afterwards...." 30 So. at 888.

Here, of course, there is no evidence that Trahan, if in possession, would have attempted to sell the stock at the higher prices which it reached after the date of conversion. Although the facts of the two cases are not identical, however, *Gragard* certainly demonstrates that Louisiana courts have not felt compelled in every situation to calculate damages for conversion strictly according to the traditional formula.

Although these decisions are, as the trial court remarked, rather "elderly," Louisiana has published no obituary of their demise. The Louisiana courts have many times since discussed the issue of damages for conversion. Neither expressly nor implicitly, however, have they repudiated either *Leurey* or *Gragard* in their holding that the unique circumstances of some transactions may call for the value of converted property to be fixed at some time other than the date of conversion.

"Great deference" should be accorded to a district judge's interpretation of the law of his or her state. *O'Toole v. New York Life Insurance Co.,* 671 F.2d 913, 914 (5th Cir. 1982). "The district court's opinion is subject to review on appeal and will be overturned if clearly wrong. However, where the state law is uncertain, we are hesitant to second guess the federal district court judge." *Avery v. Maremont Corp.,* 628 F.2d 441, 446 (5th Cir. 1980). Upon investigation of Louisiana law, we cannot say that Judge Stagg was clearly wrong in his interpretation. We reject the Bank's argument that the court was obligated to fix damages at the value of the stock at the time of conversion.

Trahan maintains that he should as a matter of law have received the highest value reached by the stock between the date of conversion and the date of judgment. In support of this assertion, he provides this Court with neither citations, rationale, nor argument. We see no reason to compel the imposition of the measure of damages which he seeks.

The trial court levied a damage award which was proper under Louisiana law.

AFFIRMED.

---

**4.** Mayer was the defendant in a related case involving the same disputed shares of stock.

*See Leurey v. Mayer,* 122 La. 486, 487, 47 So. 839 (1908).